JANE DOE *vs.* GERARD CREIGHTON.

Middlesex. February 6, 2003. - April 30, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Child Abuse. Limitations, Statute of. Evidence,* Sexual conduct.

In an action seeking damages for injuries arising from sexual abuse that was alleged to have occurred some forty years prior to this action, the judge properly granted the defendant's motion for summary judgment on the ground that the plaintiff's claims were barred by the applicable statute of limitations, where, on the record presented, the plaintiff, who invoked the discovery rule by claiming that her delay in filing suit stemmed from a failure to recognize the cause of her injuries, failed to present sufficient evidence to support a finding that her failure to grasp the connection between her symptoms of grief, shame, and depression and the defendant's conduct was objectively reasonable. [283-287] SOSMAN, J., concurred.

CIVIL ACTION commenced in the Superior Court Department on August 11, 1998.

The case was heard by *James F. McHugh, III,* J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Marielise Kelly* for the defendant.

*David P. Dwork* (*Adam M. Berkowitz* with him) for the plaintiff.

COWIN, J. The plaintiff, who has been called Jane Doe, filed a complaint on August 11, 1998, seeking damages for injuries arising from sexual abuse, some forty years after the abuse is alleged to have occurred. A judge in the Superior Court granted the defendant's motion for summary judgment on the ground that the plaintiff's claims were barred by the applicable statute of limitations. In an order and unpublished memorandum pursuant to its rule 1:28, the Appeals Court reversed, citing *Ross* v. *Garabedian*, 433 Mass. 360 (2001). *Doe* v. *Creighton*, 55 Mass. App. Ct. 1111 (2002). We granted the defendant's application

for further appellate review and affirm the decision of the Superior Court.

1. *Background.* Viewed in the light most favorable to the plaintiff, see *Ravnikar* v. *Bogojavlensky*, 438 Mass. 627, 628 (2003), the record indicates the following. In the spring of 1958, the plaintiff was in her senior year of high school. She turned seventeen years old on May 6 of that year, and planned to join a convent after graduation. The defendant, Gerard Creighton, was a Roman Catholic priest assigned to the plaintiff's parish. During the spring and summer of 1958, the plaintiff participated in a number of parish youth activities organized by the defendant. During the course of these activities, she and the defendant engaged in a series of sexual acts: the defendant, at various times, rubbed her breasts, touched her genitals, and asked her to rub both his buttocks and his exposed penis.[1] After her graduation, the plaintiff, at the defendant's urging, decided to enter the Novitiate of the Sisters of Saint Joseph in Framingham rather than a convent in Nova Scotia, as she had originally planned. Prior to entering the convent, the plaintiff underwent extensive oral surgery to remove all her upper teeth.[2] While she was hospitalized, recovering from the operation, the defendant again touched her sexually.

After joining the Sisters of Saint Joseph, the plaintiff began suffering symptoms of grief, shame, and depression. Although she left the convent in 1968 and subsequently married, the symptoms persisted. According to her treating psychiatrist, the plaintiff's depression stemmed from her feelings of extreme unworthiness and defectiveness. While the plaintiff understood that her depression stemmed from her feelings of self-hatred, she failed to recognize that those feelings of self-hatred were, in turn, the product of her sexual abuse. Instead, she saw her sexual experiences with the defendant as additional evidence of, rather than the source of, her defectiveness. According to the plaintiff, she did not come to realize that the defendant's conduct

---

[1]Although the plaintiff cannot recall the full details of one incident when she was alone with the defendant in a cottage on Cape Cod, she maintained continuous memories of the other alleged incidents.

[2]The plaintiff alleges that the defendant played some role in recommending this procedure.

was the root cause of her psychological problems until after she revealed the details of the abuse to another priest in August, 1995.

2. *Discussion.* General Laws c. 260, § 4C, requires that a civil suit alleging sexual abuse of a minor be commenced within three years of the alleged abusive act, "or within three years of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by said act."[3] By adopting this formulation, the Legislature extended to child sexual abuse actions the common-law "discovery rule," i.e., that the limitations period in some tort cases does not commence until the connection between the defendant's actions and the plaintiff's alleged injury becomes either known or knowable. See *Ross* v. *Garabedian*, 433 Mass. 360, 362-363 (2001). Thus, the three-year limitation period of § 4C does not begin to run until a plaintiff has first, an awareness of her injuries and, second, an awareness that the defendant caused her injuries. See *id.* at 363. The plaintiff here admits that she has had the first type of knowledge for more than three years prior to filing suit. She concedes, in fact, that she first became aware of her psychological symptoms shortly after joining the convent in 1958. The plaintiff bases her limitations argument, instead, on an absence of the second type of knowledge: she claims that she did not become aware that the defendant had caused her injuries until the end of August, 1995, when the plaintiff discussed the defendant's actions with another priest. Consequently, because she filed suit within three years of the date that she first connected the defendant to her injuries, the plaintiff maintains that § 4C does not bar her claim.

A plaintiff who invokes the discovery rule by claiming that her delay in filing suit stems from a failure to recognize the cause of her injuries bears the burden of proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge. See *Riley* v. *Presnell*, 409 Mass. 239, 243-247 (1991); *Phinney* v. *Morgan*, 39 Mass. App. Ct. 202, 206 (1995). The question when the plaintiff knew or should

---

[3]General Laws c. 260, § 4C, further provides that this three-year statute of limitations is automatically tolled until the victim reaches eighteen years of age.

have known that the defendant's actions were the cause of her injuries is one of fact, see *Riley* v. *Presnell, supra* at 240, and thus to survive the defendant's motion for summary judgment the plaintiff must demonstrate a reasonable expectation of proving that her suit was timely filed. See *Dias* v. *Brigham Med. Assocs.*, 438 Mass. 317, 319 (2002). We conclude that, on this record, the plaintiff has not presented sufficient evidence to support a finding that her failure to grasp the connection between her symptoms and the defendant's conduct was objectively reasonable. We therefore do not reach the question of the plaintiff's actual causal knowledge.[4]

We examine the reasonableness of the plaintiff's delay in filing suit from the perspective of "a reasonable person who has been subjected to the conduct which forms the basis for the plaintiff"s complaint." *Riley* v. *Presnell, supra* at 245. This is not, however, a subjective test; the only individualized characteristics that we consider in making a reasonable person analysis under G. L. c. 260, § 4C, are those that stem directly from the complained-of tort.[5] See *id.* Personal traits unrelated to the tort, such as cultural background and educational history, are not relevant to the reasonableness inquiry.[6] We focus instead on the nature of the abusive conduct, the injuries that the abuse inflicted, and the effect that both would have had on the causal understanding of an ordinary, reasonable person.

While we recognize that, in some circumstances, sexual abuse victims may develop coping mechanisms that might obscure the source of their injuries, see, e.g., *Hammer* v. *Hammer*, 142 Wis. 2d 257, 261-263 (Ct. App. 1987), a plaintiff who brings suit beyond the normal statutory limitations period may not reach a jury simply by presenting evidence that sexual abuse took place.

---

[4]There is some evidence that the plaintiff admitted to her psychiatrist that, prior to 1995, she had begun to understand that she might be a sexual abuse victim. Because we do not reach the question of the plaintiff's actual causal knowledge this evidence does not affect our holding.

[5]Of course, if a plaintiff could not adequately understand his or her legal rights due to a mental illness, the statute of limitations would be tolled until that disability abated. See G. L. c. 260, § 7; *McGuinness* v. *Cotter*, 412 Mass. 617, 624 & n.9 (1992).

[6]A plaintiff's educational and cultural background, however, might be probative of a plaintiff's *actual* knowledge of causality.

In order to survive a motion for summary judgment in those circumstances, a plaintiff must show that the nature of the abuse was such that it would cause an objectively reasonable person to fail to recognize the causal connection between it and the injuries that it caused. *Riley* v. *Presnell, supra* at 246.

That additional evidence is not present here. Based on the record before us, neither the nature of the defendant's conduct nor the injuries reported by the plaintiff should have prevented, or even hindered, the plaintiff's realization that she had been harmed by his alleged abuse. There is no evidence, for example, that the defendant made any attempt to cloak his actions behind a facade of normalcy or otherwise disguise the nature of the abuse. Cf. *Riley* v. *Presnell, supra* at 246-247 (abuse portrayed as therapeutic technique); *Armstrong* v. *Lamy*, 938 F. Supp. 1018, 1039-1040 (D. Mass. 1996) (abuse by teacher could be mistakenly perceived as normal part of intimate personal relationship). Nor did the timing of the abuse act to conceal the causal relationship. While a person who is victimized at an early age or over a period of years might, later in life, perceive the resulting psychological symptoms as having always been present and thus fail to connect them to a particular triggering event, in this case the abuse began when the plaintiff was sixteen and ended when she was seventeen. Thus, the defendant's conduct and its consequent effects would hardly have been a distant memory when the plaintiff reached her eighteenth birthday, the point at which the limitations period of § 4C normally begins to run. Finally, the connection between the abuse alleged here and the plaintiff's symptoms should have been particularly obvious because the abuse was a watershed event; the plaintiff's symptoms first appeared in the immediate wake of the abusive conduct. Thus the record, viewed objectively, depicts an overtly abusive relationship that produced an immediate and obvious injury as the plaintiff neared the age of maturity. There is, in short, no evidence tending to support the plaintiff's contention that an ordinary, reasonable person in her position would fail to realize, for almost four decades, that her injuries were caused by the defendant.

We recognize that the record contains a psychiatric report that concludes that a reasonable person in the plaintiff's position

would not have recognized the causal connection between the abuse she suffered and her psychological symptoms. It is apparent from the balance of the report, however, that the benchmark reasonable person referred to by the psychiatrist is not the hypothetical member of the general population required by the law, see Restatement (Second) of Torts § 283 comment c (1965), but, instead, a person who shares all of the plaintiff's individual characteristics and vulnerabilities. The section dealing with the plaintiff's inability to connect her disabilities to her abuse, for example, focuses on those traits that made the plaintiff uniquely vulnerable: her sexual naiveté at the time of the incidents, the contemporaneous extraction of her upper teeth, and her subsequent feelings of isolation within the convent. As we have explained, these subjective factors may not be considered when making the objective analysis required by G. L. c. 260, § 4C. Because the psychiatrist's report relied on these individualized characteristics, it does not shed any light on the objective reasonableness of the plaintiff's lack of causal knowledge and, consequently, fails to satisfy the plaintiff's evidentiary burden. The plaintiff has thus failed to present any evidence tending to show that a reasonable person, subject to the same abuse as the plaintiff and suffering from the same symptoms as the plaintiff, would not have recognized that the two were connected well before 1995. It follows that, because the plaintiff cannot demonstrate a reasonable expectation of proving an essential element of her case, the defendant is entitled to summary judgment. See *Dias* v. *Brigham Med. Assocs.*, 438 Mass. 317, 319 (2002).

Our decision in *Ross* v. *Garabedian*, 433 Mass. 360 (2001), is not to the contrary. While the bulk of that decision was devoted to a discussion whether the plaintiff actually knew of the connection between the abuse alleged and the injuries that it caused, see *id.* at 363, 365-366, we also concluded that the question whether a reasonable person in the plaintiff's position would have recognized the link between the two presented a triable issue. See *id.* at 363. However, the plaintiff in the *Ross* case was in his early teens when the abuse occurred and the psychological injuries produced by the defendant's conduct were not immediately apparent. See *id.* at 361. The *Ross* case

represents the outer boundaries of the discovery rule. The two factors mentioned above were sufficient to establish a question of material fact concerning the reasonableness of the plaintiff's twenty-eight year delay in filing suit. See *id.* at 363. Neither is present here, and we consequently affirm the judgment of the Superior Court.

*So ordered.*

SOSMAN, J. (concurring). I agree that there are at least tenuous distinctions between the facts of this case and those in *Ross* v. *Garabedian*, 433 Mass. 360 (2001), but, in my view, there should be no need to tease out such distinctions. For the reasons articulated in my dissent in that case, *id.* at 367-372 (Sosman, J., dissenting), the record there also demonstrated that, many years prior to commencement of the action, the plaintiff "reasonably should have discovered that an emotional or psychological injury or condition was caused by" the sexual abuse. *Id.* at 367 (Sosman, J., dissenting), quoting G. L. c. 260, § 4C. That case indulged in the subjective analysis that today's decision rightly eschews. There, as here, a sympathetic explication of why a particular plaintiff did not have actual knowledge does not satisfy the objective test of what a reasonable person would have understood about the causal relationship between prior sexual abuse and later psychological harm. Today's decision announces that the *Ross* case "represents the outer boundaries of the discovery rule," *ante* at 287, which hopefully will operate to confine that erroneous decision to its precise facts.