Locke, Jeffrey A., J.
Plaintiff Joseph M. Laconte brought suit against Chester Devlin alleging that Devlin, while a priest and teacher at Holy Name Catholic High School in 1979, sexually assaulted him on multiple occasions when the plaintiff was a 16-year-old junior at the Holy Name Catholic High School in Worcester. Suit was commenced on June 2, 2003. As against Devlin, the plaintiff asserts claims for sexual battery, negligence, and intentional or negligent infliction of emotional distress.[1] The defendant seeks summary judgment based on a claim that the action is barred by the statute of limitations.
FACTS[2]
The plaintiff, Joseph Laconte (“Laconte”), is a 44-year-old divorced father of two who resides in Leicester, Massachusetts. He was raised in Worcester and attended the Holy Name Catholic High School. He subsequently received a medical degree in podiatry and worked as a podiatrist until March 1999, when his license was suspended.
In 1978-79, Laconte was in the 11th grade at the Holy Name Catholic High School in Worcester. Devlin, an ordained Catholic priest, taught a course entitled, “Love, Dating, Sex and Marriage” and befriended the plaintiff while he was one of the defendant’s students. According to Laconte, the defendant bestowed many benefits on him including permitting the plaintiff to drive his car, providing him alcohol on occasion, and serving as a confidante. During the winter and spring of that academic year, Devlin invited the plaintiff and another boy to spend overnights at his family’s home in East Douglas which the defendant described as a “camp.”
At some time toward the end of the school year the plaintiffs relationship with his then-girlfriend terminated after an argument at a school dance (i.e., he was “dumped”). Upset about the breakup, Laconte called *623 the defendant who drove to the school and picked him up, returning together to the camp. Once there, the defendant touched the plaintiff in a sexual manner for the first time. Such touchings (of an unspecified nature) continued during May and June 1979, with an admonition from the defendant that Laconte would “lose God’s favor” if he reported their sexual relationship to anyone.
According to the plaintiff, he began consuming alcohol at about the time of his contact with the defendant and quickly became an alcoholic and drug addict. Notwithstanding his substance abuse, Laconte managed to pursue his education, obtaining a medical degree in podiatry. He also married in 1991 and had two children, a son in 1994 and a daughter in 1997. His drinking and drug abuse continued through the 1990s and his health deteriorated, partly as a result of his alcoholism. Additionally, he had very poor self-esteem and was frequently depressed.
In January 1996, the plaintiff was admitted to the Gosnold Treatment Center, a substance abuse program located in Falmouth. He reported daily use of opiates and alcohol which was adversely affecting his marriage and medical practice. As part of the intake process, Laconte disclosed that he was sexually abused by a priest at age 16 resulting in feelings of shame and guilt. As well, the intake counsellor opined that Laconte was in denial regarding his family life while growing up. Laconte was discharged from Gosnold after an eight-day stay. He continued to struggle with his addictions and in March 1999, had his license to practice podiatry suspended (although not specified the suspension appears related to continuing drug and alcohol abuse). In May 1999, the plaintiff was hospitalized for an overdose and was subsequently released to a halfway program at the Channing House in Worcester.
In July 1999, Laconte was referred to the Henry Lee Willis Treatment Center for counselling services. According to an intake evaluation conducted on July 13, 1999, Laconte reported that he was the youngest of nine children, that his father was verbally abusive and used corporal punishment on the plaintiff, and that he was sexually abused by a priest while in the 11th grade. In one counselling session in July the plaintiff and his therapist discussed the relationship between feelings of low self-esteem and his history of sexual abuse (as well as verbal abuse by his father). The therapist noted that Laconte had not been in therapy regarding these issues “and is willing to begin work.”[3] Thereafter, in counselling sessions during November 1999, Laconte explored feelings of responsibility, shame and guilt relating to the sexual abuse and related them to his current problems. His therapist noted the plaintiff to be insightful and making great strides in therapy. Finally, toward the end of 1999, the therapist reported that Laconte had connected feelings guilt (a trigger to substance abuse) to his sexual abuse as a teenager, including feeling guilty about his mixed emotions for his abuser.[4]
In an affidavit submitted as part of his Opposition to the motion for summary judgment, the plaintiff acknowledged that he never repressed memories of the defendant’s sexual abuse but asserted that he did not connect the abuse to his addiction or emotional injuries. Rather, according to Laconte’s Answers to Interrogatories, “I don’t recall the date but some time in late 2000, I came across an old issue of Sports Illustrated about Sexual Abuse in Coaching. I underwent many revelations with regard to my feelings of guilt and this being my fault and finally began to appreciate it wasn’t my conduct, which was bad, but it was Fr. Devlin’s conduct that was wrongful.”[5]
DISCUSSION
“Summary judgment is appropriate where there is no genuine issue of material fact and, where viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law.” O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000); Mass.R.Civ.P. 56(c). The moving party has the burden of affirmatively demonstrating that the pleadings present no genuine issue of fact on every relevant issue and its entitlement to a judgment in its favor. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. The opposing party may not rest on the allegations of the pleadings. Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 728 (1989). Mere contradictions of factual allegations, without evidentiary support, are inadequate to raise a question of material fact sufficient to defeat a summary judgment motion. Madsen v. Erwin, 395 Mass. 715, 721 (1985).
The defendant contends that the plaintiffs claims are statutorily time-barred. The statute of limitations applicable to sexual assault and battery is set forth in M.G.L.c. 260, §4C, which provides that such actions,
shall be commenced within three years of the acts alleged to have caused an injury or condition or within three years of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by said act, whichever period expires later; provided however, that the time limit for commencement of an action under this section is tolled for a child until the child reaches eighteen years of age.
As well, M.G.L.c. 260, §2A governs general tort claims, including the plaintiffs claims for negligence and negligent/intentional infliction of emotional distress, and provides that such actions be brought *624 within three years of the accrual of the cause of action. Like the statutorily prescribed tolling for sexual abuse to minors, the statutory time period for general tort claims exempts periods of time when the cause of action was unknown or unknowable. Riley v. Presnell 409 Mass. 239, 244 (1991); Phinney v. Morgan, 39 Mass.App.Ct. 202 (1995).
In order to avoid summary judgment in the face of a claim of untimeliness, a plaintiff relying on the discovery rule “bears the burden of proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge.” Doe v. Creighton, 439 Mass. 281, 283 (2003). Although when the plaintiff knew or should have known of the cause of action is generally a question of fact, the plaintiff (at the summary judgment stage) must demonstrate sufficient evidence that an objectively reasonable person would have failed to recognize the causal connection between the sexual abuse and the injuries it caused. Id. at 285. Merely alleging that sexual abuse occurred is not sufficient to overcome a claim of untimeliness, rather there must be evidence that the nature of the abuse or the circumstances in which it took place were such that a reasonable person, under like circumstances, would have failed to recognize the causal relationship between the tortuous conduct and resulting injuries. In making this determination the court does not consider characteristics individual to the plaintiff but focuses on the nature of the acts, the resulting injuries, and the effect that both would have had on the causal understanding of an ordinary, reasonable person. Id. at 284.
Here, the plaintiff was nearly 17 years old and a junior in high school when he alleges the defendant made sexual overtures toward him, first after the breakup of a high school romance and continuing for a dozen or more occasions thereafter. According to the plaintiff, the defendant’s homosexual overtures were accompanied by warnings that the plaintiff would “lose God’s favor” if he told anyone about their sexual activities. Further, “(I]t was at this time that I began to drink alcohol which turned very quickly to severe alcoholism and drug addiction and abuse.”[6] The plaintiff also acknowledges that he never suppressed or forgot about the defendant’s sexual conduct. Thus, at a minimum it is clear that Laconte was fully aware of the defendant’s wrongful conduct since 1979 and developed a substance abuse problem at about the time of (or shortly after) that conduct, suggestive of a causal connection.
Notwithstanding his assertion of the early onset of alcoholism the plaintiff outwardly functioned well in society. He obtained a medical degree, established his own practice in podiatry, married and raised two children. His abuse of alcohol and drugs led to a series of detoxifications and short-term treatments. Over a four-year period, from 1996 to 2000, the plaintiff was treated at five separate in-patient or residential programs, receiving psycho-social evaluations and treatment plans on at least two occasions (Gosnold in 1996; Willis in 1999). In connection with his substance-abuse issues, Laconte reported suffering from long-term feelings of shame, guilt, depression and low self-esteem. The psycho-social evaluation in 1996 associated feelings of shame and guilt with the sexual abuse he suffered as an adolescent. Similarly in 1999, Laconte disclosed the sexual abuse as part of his family and developmental history with the Willis Center, following which he participated in individual therapy focussed, at least in part, on issues of sexual abuse. In Progress Notes dated November 13 and 20, 1999, his therapist reported that the plaintiff was insightful in connecting the sexual abuse to psychological features (desire to please others, inability to say “no,” engaging in a cycle of guilt) that he struggled with. The Willis Center records are replete with references to the plaintiffs intelligence, insight, and commitment to working through therapy as a means of maintaining sobriety.
The plaintiff contends that his treatment records from the latter part of the 1990s show, at most that his treating therapists may have drawn a connection between his psychological injuries and early sexual abuse but do not prove that he made a similar causal connection. To the contrary, the plaintiff asserts that he did not make a connection until sometime in 2000 when he read an article about sexual abuse in coaching. The assertion, while relevant to the issue of the plaintiffs actual knowledge, does not affect the determination regarding whether an objectively reasonable person would have been on notice of the causal relationship.
Considering all of the facts and circumstances in the light most favorable to the plaintiff (as the non-moving party for summary judgment) the Court finds them to be foursquare with Doe v. Creighton. There, the plaintiff, a high school senior considering a vocation as a nun, was molested by her parish priest over the course of a year. Shortly after graduating high school and entering the Novitiate she experienced feelings of shame, grief and depression, which persisted and escalated over the course of nearly four decades. She claimed that she did not understand or recognize the causal relationship between the sexual abuse and her psychological injuries until speaking with another priest 37 years after the abuse. On these facts, the SJC wrote, “neither the nature of the defendant’s conduct nor the injuries reported by the plaintiff should have prevented, or even hindered, the plaintiffs realization that she had been harmed by his alleged abuse . . . viewed objectively, [the record] depicts an overtly abusive relationship that produced an immediate and obvious injury as the plaintiff neared the age of maturity. There is, in short, no evidence tending to support the plaintiffs contention that an ordinary, reason *625 able person in her position would fail to realize... that her injuries were caused by the defendant.” Creighton, 429 Mass. at 285.
Similarly here, the plaintiff alleges a series of sexual advances by the defendant when the plaintiff was nearly 17 years old. At the time, Laconte recognized and understood that the conduct was wrong and that he felt uncomfortable with it. Concomitantly, he began using, and abusing, alcohol which escalated to an addiction. There is no evidence arising from the relationship with Devlin or from the nature of the abuse that might reasonably excuse a failure to draw a causal connection between the abuse and his psychological condition. Moreover, even if there were circumstances existing closer in time to the conduct that justified a delayed realization, those circumstances could not excuse the failure to appreciate the causal connection when it became the subject of extensive counseling in the late 1990s.
The plaintiff has failed to present evidence tending to show that a reasonable person, subject to the same abuse as the plaintiff and suffering from the same psychological injuries as the plaintiff, would have failed to realize that the two were connected prior to June 2, 2000 (three years prior to the filing of suit). Consequently, the defendant is entitled to summary judgment on the claims of sexual battery and infliction of emotional distress.
The plaintiff s claim in negligence brings a different result. Count Five of the Complaint alleges that “Devlin, as a priest and teacher, owed a duty to the plaintiff to protect him and to refrain from abusing the plaintiff.”[7] Although not styled as such in the complaint, the claim asserts negligence arising out of a breach of a fiduciary relationship between the defendant and the plaintiff. As to a claim for either intentional or negligent breach of fiduciary relationship, the discovery rule does not apply an objective test, rather the statute of limitation commences when the plaintiff has actual knowledge of the causal connection between claimed injuries and the fiduciary’s repudiation of trust. Lattucca v. Robsham, 442 Mass. 205, 213 (2002); Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 518 (1997); Clark v. Rowe, 428 Mass. 339, 345 (1998).
In Doe v. Harbor Schools, Inc., 63 Mass.App.Ct. 337 (2005),[8] the Appeals Court applied the actual knowledge requirement to a claim of negligent breach of fiduciary relationship based on a claim of sexual abuse between a counselor and client, stating that, “where psychological injuries are at issue, knowledge of psychological harm flowing from another’s conduct or even knowledge that the other person’s conduct is wrong is not knowledge that the conduct violates the other person’s fiduciary obligations.” Id. at 348. As to this additional element the discovery rule tolls the statute of limitations until the plaintiff actually knew that the harm complained of arose from the abuse of trust.
In the instant case the defendant’s relationship with the plaintiff arose out of his position as a priest and teacher. The defendant befriended the plaintiff who was a student in his class. According to treatment records from Gosnold and the Willis Center, the plaintiff was raised in a somewhat dysfunctional family, the youngest of nine children with a verbally abusive father and emotionally distant mother. The circumstances surrounding the plaintiffs family situation provided fertile ground for the defendant to establish a role as a mentor and confidante, all the more so given his status as a priest and teacher.[9] The plaintiff developed such a relationship with Devlin leading to overnights at the defendant’s lakeside home and disclosures about the plaintiffs dating relationships. When his high school romance collapsed (in the midst of a school dance) the plaintiff immediately turned to the defendant for support and solace and the defendant responded to the plaintiffs distraught condition by initiating sexual contact. These facts, if proven, create a genuine issue of fact as to the existence of a fiduciary relationship.
The treatment records describe a number of psychological conditions suffered by the plaintiff. Shame, guilt, depression, a desire to please others, and feelings of being an independent loner unable to establish strong personal relationships, were noted by mental health professionals as features of the plaintiffs personality. As reflected in the progress notes in 1999, therapists counseled the plaintiff to explore the relationship between his early sexual abuse and these conditions, sufficient to establish, objectively, that a connection should have been established. However, that causal relationship was between the offensive conduct and the plaintiffs psychological injuries, and not necessarily between the psychological injuries and the defendant’s position as a mentor. Significantly, the plaintiff (in his affidavit) has identified a magazine article involving sexual abuse by coaches (presumably involving young athletes) as the trigger for his realization that he was victimized by the breach of trust he placed in the defendant as a priest and teacher. According to the plaintiff, this realization occurred in late 2000, within three years of filing suit.
Although the Appeals Court’s application of an actual knowledge requirement to a breach of fiduciary claim in the context of sexual abuse is currently under review by the Supreme Judicial Court, it is, at least for now, established precedent, and governs the determination as to whether summary judgment is appropriate as to Count Five of the Complaint. The Court finds that there is a genuine issue of material fact as to when the plaintiff had actual knowledge connecting his psychological injuries to the breach of trust by the *626 defendant. Accordingly, the defendant’s motion must be denied as to that claim.
ORDER
For the foregoing reasons, the defendant’s Motion for Summary Judgment is ALLOWED as to Counts Four and Six, and DENIED as to Count Five.

Claims against the Roman Catholic Bishop of Worcester (a corporation sole), and Holy Name High School were dismissed by the parties.

The facts, stated most favorably to the non-moving party, are drawn from the plaintiffs Answers to Interrogatories, an Affidavit dated March 11, 2005, and various treatment records from the Henry Lee Willis Community Center in 1999.

Progress Note dated 7/20/99 attached to Willis Evaluation Report.

According to a Progress Note dated 12/21/99, ”[H]e struggles in that he admires and loves this man and also hates him."

Answers to Interrogatories dated November 13, 2003, ¶17.

Plaintiffs Affidavit, ¶12.

Complaint, ¶40.

Further appellate review granted, 445 Mass. 1101 (2005).

As well, the course taught by the defendant, entitled “Love, Dating, Sex and Marriage,” presumably focused on issues relating to trust and intimacy and likely gave the defendant the opportunity to delve into the plaintiffs awakening sexuality in a uniquely intense manner.