NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-34

FRANCOIS AUGUSTIN[1] & another[2]

vs.

BOSTON MEDICAL CENTER & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs filed a medical malpractice complaint in the Superior Court alleging that Boston Medical Center (BMC) and certain individual medical providers (together, defendants) were negligent in failing to timely diagnose and treat their daughter. On the defendants' motion for summary judgment, the judge dismissed the complaint, holding that it was time barred and that the plaintiffs failed to meet their burden to show the

---

[1] Individually and on behalf of his minor child.

[2] Judith Delphin, individually and on behalf of her minor child.

[3] Tehnaz Boyle, Sarabeth Broder Fingert, Jennifer Fiore, Eileen Keneck, Katherine Nash, Stephen Pelton, Tyler Rainer, and Michael Stratton.

discovery rule applied and tolled the statute of limitations. This appeal followed. We affirm.

Background. According to their complaint, on August 17, 2017, the plaintiffs took their six year old child to the emergency department at BMC for a fever and rash after being treated at home with acetaminophen and ibuprofen. The child was eventually admitted for observation. A differential diagnosis of Stevens-Johnson Syndrome (SJS), a rare disease, was made. The child's condition worsened, and on August 18, 2017, she was transferred first to Massachusetts General Hospital, and then, on August 28, 2017, to Shriners Children's Boston (Shriners). The child was discharged from Shriners on September 29, 2017, where it was determined that she was likely allergic to ibuprofen.[4]

In their complaint, the plaintiffs alleged that ibuprofen caused the child to develop SJS and that the defendants were negligent on August 17 and 18, 2017, in failing to timely diagnose SJS and discontinue the use of ibuprofen that had been started prior to her admission to BMC.

---

[4] The child was ultimately diagnosed with toxic epidermal necrolysis, a rare form of SJS caused by medication, including ibuprofen.

On October 4, 2017, an attorney[5] sent a letter to Shriners on behalf of the child requesting medical records after being retained by the plaintiffs "to investigate a potential claim for personal injury damages." Included with the letter was an authorization for the release of medical records, dated September 10, 2017, and signed by the plaintiffs. On November 3, 2017, the attorney sent a similar letter to BMC with the accompanying signed authorization, dated September 10, 2017.

Shriners complied with the request and sent the records by certified mail on November 3, 2017. Later, Shriners produced, among other updated records, a "progress note" from a November 15, 2017 outpatient appointment that read, "Dad says there is an uncle [who] wants medical records as he is helping with a legal case." Within thirty minutes of that appointment, the plaintiff-father signed a second authorization for the release of updated Shriners records, citing "legal issues" as the reason for disclosure.

At the time she became ill, the child was living with her grandmother. The grandmother testified at her deposition that

---

[5] The firm with which the attorney was associated advertises that it is a nationally recognized law firm that protects patient consumers against "pharmaceutical giants" and "medical professionals who harm patients through carelessness." The attorney similarly advertises that he has experience in litigation related to medical devices, pharmaceuticals, and medical malpractice.

prior to being taken to BMC, the child had no rash on her body, and her skin was clear. She testified that the child's condition changed at the hospital, and when asked, the plaintiffs told her that it was because of a reaction to a medication that the child had been given.

At his deposition, the plaintiff-father admitted that he had an understanding that the cause of the child's SJS was ibuprofen as of the time that she was transferred to Shriners. He testified that he knew that the child had been given ibuprofen "several times" at BMC, and that he saw "her body starting to react [to the ibuprofen], and it was like open sores in her body." He further testified that "[b]ecause of the way [he] learned the cause of the sickness," he talked to his uncle about retaining an attorney. He did so "[b]ecause of the way the situation appeared."

On February 24, 2020, the plaintiff-father signed an additional authorization to release the child's BMC records to his attorneys. Attached to the request was a document entitled "proof of treatment," that contained a copy of the discharge summary from BMC generated on November 17, 2017. The discharge summary bore a "received" stamp dated March 23, 2018, indicating that the BMC records were in possession of someone acting on behalf of the plaintiffs as of that date. BMC received the records request on March 17, 2020.

4

The plaintiffs filed a complaint on June 17, 2021. In response, the defendants filed a motion to dismiss, arguing that the three-year statute of limitations barred all claims. Thereafter, the plaintiffs moved to amend their complaint; the motion was allowed over objection.[6] The amended complaint was filed on February 23, 2022. The defendants then filed a motion requiring the plaintiffs to post a bond for failure to timely file an offer of proof, which the plaintiffs opposed. The motion was allowed; the plaintiffs posted the bond, but no offer of proof was ever filed. In February 2024, the defendants moved for summary judgment pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974), on the grounds that the plaintiffs' claims were time barred. See G. L. c. 231, § 60D;[7] G. L. c. 260, § 4.[8] In

_____

[6] The judge denied the defendants' motion to dismiss, concluding that the plaintiffs' claim of delayed discovery raised a disputed issue of material fact that could toll the statute of limitations and render the complaint timely "should [the] plaintiff[s] meet [their] burden under the discovery rule." She ruled that the burden shifted to the plaintiffs to prove that the discovery rule applied to their claim.

[7] General Laws c. 231, § 60D, provides, in relevant part, that "any claim by a minor against a health care provider stemming from professional services or health care rendered, whether in contract or tort, based on an alleged act, omission or neglect shall be commenced within three years from the date the cause of action accrues."

[8] General Laws c. 260, § 4, provides, in relevant part, that "[a]ctions of contract or tort for malpractice, error or mistake against physicians, surgeons, . . . [and] hospitals . . . shall be commenced only within three years after the cause of action accrues."

response, the plaintiffs argued that there was a dispute of material fact as to when the plaintiffs understood that the child's injuries were caused by the defendants, and that a reasonable jury could find that the complaint was timely. After a hearing, the judge allowed the motion, concluding that the complaint was filed after the expiration of the governing statutes of limitations and that the plaintiffs failed to satisfy their burden of showing the applicability of the discovery rule. Specifically, the judge found that the plaintiffs had not met their burden of proving an actual lack of knowledge of causation prior to March 2020, and that they failed to show that an objectively reasonable person would have similarly lacked such knowledge until sometime after March 2020. This appeal followed.

Discussion. 1. Legal standards. We review a grant of summary judgment de novo. See Miller v. Cotter, 448 Mass. 671, 676 (2007). The question "is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

"A cause of action for medical malpractice accrues when the plaintiff learns, or reasonably should have learned, that he or

6

she was harmed by the defendant's conduct."  Lindsay v. Romano, 427 Mass. 771, 774 (1998).  It is "not require[d] that the plaintiff[s] know or have reason to know that the defendant[s] violated a legal duty to the plaintiff[s], but only that [they] knew or had reason to know that [they] had been harmed by the defendant[s'] conduct."  Bowen v. Eli Lilly & Co., 408 Mass. 204, 206 (1990).  "The plaintiff[s] need not know the full extent of the injury before the statute [of limitations] starts to run."  Id. at 207.  "The important point is that the [statute] starts to run when an event or events have occurred that were reasonably likely to put the plaintiff[s] on notice that someone may have caused [their] injury."  Id.  "Reasonable notice that a particular product or a particular act of another person may have been a cause of harm to [plaintiffs] creates a duty of inquiry and starts the running of the statute of limitations."  Id. at 210.

"Where summary judgment is sought on the basis of a statute of limitations, once the defendant establishes that the time period between the plaintiff's injury and the plaintiff's claim exceeds the applicable limitations period, the burden is on the plaintiff to prove her claim falls within the discovery rule."  Lindsay, 427 Mass. at 773-774.  The purpose of the discovery rule is to "determin[e] when a cause of action accrues, and thus when the statute of limitations starts to run."  Bowen, 408

Mass. at 205.  When the plaintiffs invoked the discovery rule, the burden shifted to them to "prov[e] both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge."  Doe v. Creighton, 439 Mass. 281, 283 (2003) (applying reasonable person analysis in context of G. L. c. 260, § 4C claim, citing Riley v. Presnell, 409 Mass. 239, 243-247 [1991]).  While this determination is often a question of fact, the plaintiffs must still prove that the summary judgment record establishes a lack of actual causal knowledge and that their failure to make the connection between the defendants' conduct and the injuries claimed was objectively reasonable.  See Doe, supra at 283-285, citing Riley, supra at 240, 246.  As discussed below, this they did not do.

2.  Analysis.  The plaintiffs argue that the judge erred in allowing the defendants' motion because there is a genuine issue of material fact as to when the plaintiffs knew or should have known that the defendants' conduct caused the child's injuries.[9]

---

[9] While the plaintiffs also argue that their education, background, and knowledge of the legal system bore on the question of when they were reasonably on notice of their claims and created a triable issue of fact, our case law is clear that "[p]ersonal traits unrelated to the tort, such as cultural background and educational history, are not relevant to the reasonableness inquiry."  Doe, 439 Mass. at 284.  See Riley, 409 Mass. at 245 ("Individual variations in judgment, intellect, or psychological health which are unrelated to the complained-of conduct are not considered" in determining when plaintiff should reasonably have known of cause of action for medical malpractice).

In the light most favorable to the plaintiffs, the undisputed facts establish that as of November 15, 2017, the plaintiffs were reasonably on notice that ibuprofen was a potential cause of the child's SJS and that it had been given to her at BMC. They saw the defendants administer ibuprofen and witnessed the child's negative reactions to it. At his deposition, the plaintiff-father admitted that he had an understanding that the child's SJS was caused by ibuprofen when she was transferred from BMC to Shriners in August 2017, that the child had an allergic reaction to ibuprofen, and that BMC had administered ibuprofen to the child "several times." He also described seeing changes to the child's body when she was administered ibuprofen. All of this, the plaintiff-father testified, made it "necessary" to seek legal counsel. And the child's grandmother testified that she was told by the plaintiff-mother that the child's condition was a result of medication given at BMC.

The summary judgment record also established that an attorney acting on the plaintiffs' behalf began investigating a personal injury claim in September or October 2017. This included obtaining medical records with releases signed by the plaintiffs. BMC provided records that were received by someone on behalf of the plaintiffs in November 2017. From this, we conclude that at a minimum, the plaintiffs were on notice of the

9

harm caused by BMC's administration of ibuprofen as early as November 2017.

Moreover, the plaintiffs failed to meet their burden under the discovery rule. "A reasonable person who has been subjected to the conduct which forms the basis for the plaintiff's complaint," Riley, 409 Mass. at 245, would have been on notice that BMC's administration of ibuprofen may have been related to the child's injury. The plaintiffs proffered no evidence as to what actions if any were taken between November 2017 and March 2020, or the objective reasonableness of those actions or inactions after November 2017, when the statute of limitations began to run. Accordingly, the discovery rule does not apply and there was no error in the entry of a judgment of dismissal. See Malapanis v. Shirazi, 21 Mass. App. Ct. 378, 383 (1986) ("On an appropriate record, summary judgment may be granted on the question whether a particular statute of limitations has run").

Judgment affirmed.

By the Court (Blake, C.J., Vuono & Neyman, JJ.[10]),

Clerk

Entered: May 4, 2026.

---

[10] The panelists are listed in order of seniority.