## James E. Ross *vs.* John Garabedian.

Middlesex. November 10, 2000. - February 12, 2001.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Sosman, JJ.

*Limitations, Statute of. Child Abuse. Practice, Civil,* Summary judgment.

The record of summary judgment in an action for sexual assault and battery did not support the judge's ruling that the action was barred by the statute of limitations, G. L. c. 260, § 4C, where the materials demonstrated that the plaintiff filed his complaint within three years of first becoming aware, during a course of psychotherapy, that he had been harmed by the defendant's conduct. [362-367] Sosman, J., dissenting.

Civil action commenced in the Superior Court Department on January 21, 1999.

The case was heard by *Hiller B. Zobel,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John J. St. Andre* for the plaintiff.
*John O. Mirick* for the defendant.

Ireland, J. This is an appeal from the allowance of a motion for summary judgment in favor of the defendant in an action arising out of a homosexual relationship between an adult and a teenager more than thirty years ago. After reviewing affidavits from the plaintiff, his therapist, and a psychiatrist, a Superior Court judge ruled that the statute of limitations barred the plaintiff's suit. We transferred the case to this court on our own motion. On appeal, we consider whether G. L. c. 260, § 4C, delays the accrual of a cause of action of a victim of sexual abuse where the plaintiff knew the activity occurred, but failed to make the "causal connection" between the defendant's misconduct and the resulting harm. Because triable issues of fact exist regarding when the plaintiff was aware of the "causal connection" between the defendant's conduct and the resulting harm to the plaintiff, we vacate the grant of summary judgment and remand for further proceedings consistent with this opinion.

1. *Background.* From approximately 1968, the plaintiff, then thirteen years old, engaged in a sexual relationship with the defendant, then twenty-seven years old, that continued until approximately 1971. The sexual contact produced feelings of guilt and shame in the plaintiff. These emotions stemmed from his sense that sexual activity of this sort was "wrong" in the eyes of "society and the Catholic Church." When he was approximately fifteen years old, the plaintiff ended the relationship. During the next thirty years, plaintiff experienced numerous failed relationships and suffered from psychological and emotional difficulties. In 1978, he sought counselling for problems he was having with his then girl friend.[1] In March, 1996, the plaintiff entered into psychotherapy with a different therapist, Christopher Gruener. From the beginning of their therapist-patient relationship, the plaintiff "consciously conceived of his sexual involvement with [the defendant] as wrong and shameful, primarily because of the homosexual nature of the exchange." According to Gruener, however, the plaintiff had only "begun to be aware of the possibility of some connection between his experience with [the defendant] and some of his presenting symptoms," by the spring of 1997. The plaintiff's inability to "link" psychological harm to the defendant's conduct stemmed from "unconscious coping or blocking mechanisms" commonly found in victims of sexual abuse. In November, 1998, at the behest of his attorney, the plaintiff underwent an evaluation by psychiatrist Dr. Larry Strasburger. During the evaluation, the plaintiff admitted that he was "scared" during the sexual encounters with the defendant, "get[s] ill thinking about [the conduct]" and realizes he "should never have been there."[2] Dr. Strasburger concluded that "[o]nly now, some thirty years later has he begun to make the connection between his childhood experiences and his adult behavior." The experts' reports conclude that the plaintiff was suffering

[1]Given the plaintiff's inability to recall the name of the therapist who treated him, discovery regarding the content of these sessions has not yet been undertaken. In his affidavit, the plaintiff states that, during these sessions, "[t]he subject of my sexual experiences with [the defendant] never came up at all. I never brought it up and I was never asked about it." For the reasons discussed below, further discovery into this matter is warranted.

[2]The record suggests that the plaintiff's memory of the events at issue has remained constant and unimpaired for over three decades and, thus, this case does not involve any issue concerning repressed memory. Contrast *Shahzade* v. *Gregory*, 930 F. Supp. 673 (D. Mass. 1996).

from a posttraumatic stress disorder as a result of the defendant's sexual conduct toward him when he was a minor.

At some point during the first six months of his treatment with Gruener, the plaintiff contemplated litigation against the defendant. A complaint was not filed, however, until January, 1999, at which time the plaintiff alleged that he suffered psychological harm as a result of a consensual sexual relationship with the defendant in 1967.[3] After admitting that there had been such a relationship, the defendant moved for summary judgment on statute of limitations grounds. For the reasons set forth by the defendant and on the authority of *Phinney* v. *Morgan*, 39 Mass. App. Ct. 202, 205 (1995), the Superior Court judge granted the defendant's motion. On appeal, the plaintiff argues that, because he lacked any awareness that he had been harmed by the defendant until entering psychotherapy in March, 1996, the statute of limitations had been tolled. He asserts that the suit is timely given its commencement within three years of the discovery of the causal connection between the defendant's conduct and the resulting psychological and emotional damage.

2. *Discussion.* General Laws c. 260, § 4C,[4] automatically tolls the limitations period on child sexual abuse cases until the victim reaches the age of eighteen years and, at that point, fixes a three-year bar on such claims. By using the phrase, "or within three years of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by said act," in the statute, the Legislature extended the "discovery rule" to sexual abuse cases

---

[3]The plaintiff's amended complaint contains the following causes of action: sexual assault and battery, intentional and reckless infliction of severe emotional distress, aiding and abetting others to abuse the plaintiff sexually, aiding and abetting others to inflict serious emotional distress on the plaintiff.

[4]General Laws c. 260, § 4, inserted by St. 1993, c. 307, provides in relevant part: "Actions for assault and battery alleging the defendant sexually abused a minor shall be commenced within three years of the acts alleged to have caused an injury or condition or within three years of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by said act, whichever period expires later; provided, however, that the time limit for commencement of an action under this section is tolled for a child until the child reaches eighteen years of age."

While the statute was not in effect at the time of the harmful conduct, the parties do not contest its application to the case at bar.

Ross *v.* Garabedian.

such as the one before us.[5] G. L. c. 260, § 4C. See *Phinney* v. *Morgan, supra* at 205 (Legislature determined discovery rule should extend to claims against perpetrator of abuse). Pursuant to this rule, causes of action do not accrue for limitations purposes until the plaintiff knew or should have known that he has been harmed by the defendant's conduct. *Riley* v. *Presnell,* 409 Mass. 239, 243 (1991) (extending discovery rule to psychotherapeutic malpractice). *Franklin* v. *Albert,* 381 Mass. 611, 617 (1980) (extending discovery rule to medical malpractice).

Where a defendant raises the statute of limitations, we must determine if a material question of fact exists as to whether the plaintiff "had '(1) knowledge or sufficient notice that [he] was harmed and (2) knowledge or sufficient notice of what the cause of harm was.' " *Riley* v. *Presnell, supra* at 244, quoting *Bowen* v. *Eli Lilly & Co.,* 408 Mass. 204, 208 (1990). On the record before us, we hold that such material questions of fact exist. See *Phinney* v. *Morgan, supra* at 209, citing *Riley* v. *Presnell, supra* at 240 ("we recognize that ordinarily when a plaintiff knew or should have known of [his] cause of action is a factual issue to be decided by a trier of fact").

Regarding the first element, it is undisputed that the plaintiff was, at all times, aware that he engaged in an improper relationship that produced feelings of shame. Regarding the second element, a survey of factually similar trial court rulings indicates a reluctance to grant summary judgment where it is unclear whether, and to what extent, a plaintiff perceived a "causal connection" between a defendant's misconduct and the plaintiff's alleged psychological harm.[6] Consistent with that trend, we believe issues of fact exist regarding when the plaintiff had

---

[5]No legislative history exists to facilitate our understanding of the statutory language.

[6]Compare Gagne *vs.* O'Donoghue, Worcester Superior Court, Civ. A. No. 941158 (June 26, 1996) (no summary judgment where, through counselling, "beginning of a certain linkage" emerged between current emotional difficulties and sexual abuse thirteen years earlier); Boudrot *vs.* Russo, Middlesex Superior Court, No. Civ. A. 950776 (Mar. 5, 1996) (no dismissal where case filed within three years of plaintiff's realizing abuse caused emotional problems); Legaski *vs.* Melanson, Middlesex Superior Court, No. Civ. A. 940592 (Oct. 5, 1994) (no dismissal where case brought within three years of therapy that enabled plaintiff to make "causal connection" between defendant's conduct and resulting injuries), with Howard *vs.* Colety, Essex Superior Court, No. Civ. A. 952910B (Aug. 29, 1996) (plaintiff's failure to "make the connection between the incidents of abuse, and the resulting harm she suffered" not relevant to decision granting summary judgment).

knowledge or sufficient notice, or reasonably should have known, that the cause of his harm was the earlier misconduct of the defendant. The record unequivocally indicates that the "causal connection" between the defendant's abuse and the plaintiff's alleged harm was not discovered until the defendant entered therapy in 1996. See *Riley* v. *Presnell, supra* at 246 (statute of limitations tolled, in part, because plaintiff "could not make the necessary causal link" between defendant's improper sexual behavior and resulting psychological injuries; response deemed "normal among the 'general patient population' who 'had been exposed to this type of exploitation' "). These issues, moreover, are clearly "material" given the Legislature's direction that "the time the victim . . . discovered that an emotional or psychological injury or condition was *caused* by [the alleged] act," is a legally relevant consideration in cases such as these. G. L. c. 260, § 4C. Because the record indicates that the case commenced within three years of the realization of that "causal connection," summary judgment on statute of limitations grounds should not have been granted.

In granting summary judgment, the judge adopted the defendant's argument that *Phinney* v. *Morgan, supra* at 205, is dispositive. The defendant contends that "whether a plaintiff should have known that he had been injured by long ago abusive conduct in order to toll the applicable statute of limitations" is determined solely by applying the *Phinney* factors, namely: (1) an unawareness that the defendant committed a wrongful act at the time of its commission; (2) the plaintiff's trust in the defendant; (3) the defendant's control over the facts giving rise to the plaintiff's cause of action; and (4) the necessity of a triggering event that makes the plaintiff aware of the defendant's potential liability.[7] *Id.* (finding claims untimely). Although judges attempting to pinpoint the moment at which a particular cause of action accrues may find these factors helpful, we do not consider the *Phinney* list exhaustive. See *Flanagan* v. *Grant,* 79 F.3d 1, 2 (1st Cir. 1996) (per curiam) (*Phinney* "lends support" to decision, but *Phinney* factors not applied). First, the *Phinney* case did not turn on G. L. c. 260, § 4C, and is thus

---

[7]For cases applying the *Phinney* factors, see, e.g., Doe *vs.* Commonwealth, Essex Superior Court, No. Civ. A. 970166A (July 20, 2000); Nault *vs.* New England Annual Conference of the United Methodist Church, Suffolk Superior Court, No. Civ. A. 9503457 (June 14, 1996).

distinguishable from this case. *Id.* at 202 (suit brought against mother for failure to protect plaintiffs from sexual abuse). Second, judges have demonstrated a willingness to resolve summary judgment motions involving the statute of limitations without limiting their inquiry to the *Phinney* factors. See, e.g., *Armstrong* v. *Lamy*, 938 F. Supp. 1018, 1038-1041 (D. Mass. 1996) (disposing of motion without relying on *Phinney* factors); *Szymczuk vs.* Szymczuk, Middlesex Superior Court, No. Civ. A. 923581 (March 5, 1996), aff'd, *Avola* v. *Szymczuk*, 44 Mass. App. Ct. 1114 (1998) (same). Thus, while *Phinney* v. *Morgan*, *supra* at 205, properly recognized "that because of the nature of the injury and the relationship of the parties, a child may . . . be unaware of any harm or its *cause* until years after the abuse" (emphasis added), we do not believe the inquiry into such cause should be limited to those articulated factors.

We also reject the argument that the plaintiff's contemporaneous knowledge that the contested behavior was "wrong" and "shameful" constituted sufficient "harm" to trigger the statute of limitations. For the statute of limitations to be triggered, the plaintiff must suffer some "appreciable harm," *Swasey* v. *Barron*, 46 Mass. App. Ct. 127, 129 (1999) (legal malpractice), but need not know the full extent of his alleged injuries. *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 207 (1990). For example, in *Armstrong* v. *Lamy*, *supra* at 1040, the defendant argued that, where the plaintiff felt "uncomfortable," "scared," and "nervous" at the time of the sexual contact, had insomnia during the time period of the sexual contact, and felt pain from his arm's being gripped, such "constitute[d] enough injury, as a matter of law, to put [the plaintiff] on notice, at the time of the sexual contact, that he had been injured and by whom." In denying the individual defendant's motion for summary judgment, the judge stated "any evidence that [the plaintiff] was 'uncomfortable' or refused to participate in some aspect of the sexual contact, is not enough to support a decision, as a matter of law, that he suffered an 'injury,' or to determine that beyond genuine dispute [the plaintiff] knew or should have known he had been harmed." *Id.* Rather, in the context of the parties' relationship (i.e., teacher-student), "a finder of fact could reasonably find that the[] fleeting moments of physical pain were not perceived by [the plaintiff] at the time as 'injury.' " *Id.* Furthermore, in cases where summary judgment has been granted, the alleged injuries were more extensive and tangible

than the shame and sense of wrong that are involved here. See, e.g., *Phinney* v. *Morgan, supra* at 208 (plaintiffs discussed bringing suit against parents; one ran away from home three times because of abuse); *Flanagan* v. *Grant, supra* at 2 (plaintiff filed criminal charges against father and manifested strong desire to escape repeated abuse).

Here, that the plaintiff knew his conduct was shameful and wrong does not "provide [him] with the modicum of knowledge required to trigger the statute of limitation[s]." *Phinney* v. *Morgan, supra* at 209. A rational finder of fact could find that the plaintiff, a teenager at the time, felt shame or a sense of wrong because his conduct was contrary to accepted church or family morals, but he was not aware that he had suffered any appreciable or legally recognizable "harm." See *Armstrong* v. *Lamy, supra* at 1040; Gagne *vs.* O'Donoghue, Worcester Superior Court, No. Civ. A. 941158 (June 26, 1996) (although alleged acts caused plaintiff to feel sick and embarrassed, whether plaintiff recognized that harm and conduct were "causally related" constitutes genuine issue of material fact).

Next, it is not sufficient to claim that the plaintiff should have linked the emotional difficulties in his life with the defendant's misconduct decades ago. The record suggests that there are other incidents from the plaintiff's childhood (e.g., "explosions" and "raging" between the plaintiff's parents due to his father's alcoholism; drug and alcohol use during his early adolescence) that he might reasonably have identified as the source of his problems. These reasons, together with the plaintiff's psychological coping mechanisms prevent us from concluding that, as a matter of law, the plaintiff knew or should have known that he suffered harm caused by the defendant to trigger the statute of limitations. *Riley* v. *Presnell, supra* at 245, quoting *Bowen* v. *Eli Lilly & Co., supra* at 208 (court considers "reasonable person in the position of the plaintiff" (emphasis omitted).[8]

---

[8]As for the plaintiff's remaining counts, we similarly apply the discovery rule, as embodied in G. L. c. 260, § 4C. See Eilert *vs.* Carey, Worcester Superior Court, No. Civ. A. 951227A (June 2, 1998), citing *Riley* v. *Presnell,* 409 Mass. 239, 243 (1991). Where, as here, (1) the causes of action arise from the same alleged sexual abuse and (2) similar issues of material fact exist regarding when the plaintiff made the "causal connection" necessary to trigger the emotional distress statute of limitations, the remaining counts

We make one final observation. The plaintiff's deposition testimony indicates that he participated in "three or four" sessions with a therapist recommended by a "friend of the family." Although the plaintiff does not recall that therapist's name, the address of the individual who recommended that therapist is in the record and, thus, should be readily available to either party. If, based on further discovery, the judge determines that, at the time of the 1978 therapy sessions, the plaintiff was aware that the problems in his relationship were "causally connected" to the defendant's conduct, a subsequent summary judgment motion would be appropriate. Absent such findings, the plaintiff has proved the existence of a triable issue of fact, thereby rendering summary judgment inappropriate.

For the reasons stated above, we vacate the entry of summary judgment. The case is remanded to the Superior Court for further findings regarding the content of the plaintiff's 1978 therapy sessions.

*So ordered.*

SOSMAN, J. (dissenting). Pursuant to G. L. c. 260, § 4C, the plaintiff's action to recover for damages resulting from sexual abuse had to be brought within three years of the time he discovered "or reasonably should have discovered that an emotional or psychological injury or condition was caused by" the sexual abuse. Thus, where the plaintiff's complaint was not filed until January, 1999, the relevant inquiry is whether he knew or should have discovered, at any time prior to January, 1996, that any of his emotional and psychological problems were causally related to the sexual abuse perpetrated by the defendant. I agree with the majority that the plaintiff has raised a triable issue as to his lack of actual knowledge that such a causal connection existed until he learned of that causal connection in the course of recent psychotherapy. However, as to whether the plaintiff "reasonably should have discovered" such a causal connection at some earlier date, there is no triable issue and the defendant was therefore entitled to summary judgment.

survive summary judgment. *Riley* v. *Presnell, supra,* quoting *Franklin* v. *Albert,* 381 Mass. 611, 617 (1980) (absent statutory definition regarding when cause of action accrues, determination is "the product of judicial interpretation in this Commonwealth").

The defendant's sexual abuse of the plaintiff began in 1968, when the plaintiff was thirteen years old, and continued until sometime in 1971. During that time period, the plaintiff went to the defendant's house once or twice a week, with sexual activity occurring on most of those visits. At no time has the plaintiff repressed his memories of these repeated sexual contacts with the defendant. Throughout the many years that have elapsed since the abuse took place, the plaintiff has remained aware that the defendant instigated sexual activity with him on numerous occasions during his early adolescence.

By 1978, when the plaintiff was twenty-three years old, he also knew that he had emotional and psychological problems. At the insistence of his then girl friend (who threatened to terminate the relationship unless he sought help), the plaintiff had three or four sessions with a therapist. The plaintiff recalls having difficulties with relationships, describing himself as jealous, controlling, and insecure. Since his marriage in 1981, the plaintiff has engaged in numerous extramarital affairs, including several such affairs in the early 1990's. His promiscuity notwithstanding, he also experienced sexual problems, including difficulty achieving orgasm. Starting in 1993 and continuing for the next five years, he experienced significant sleep disturbance (consisting of an inability to sleep for longer than one-half hour without waking up). Thus, for many years prior to the filing of this lawsuit, the plaintiff knew that he suffered an assortment of troubling psychological symptoms.

The only issue remaining is whether the plaintiff should have realized that there was a causal connection between the two to three years of weekly sexual abuse he suffered as a young teenager and the psychological (including sexual) problems that have plagued his adult life. While appreciating that a history of sexual abuse and its attendant consequences are painful for a victim to realize, and thus that it would be very difficult for a victim to figure out on his own that the abuse had caused subsequent psychological problems, this court can take judicial notice of the widespread publicity on these very issues, publicity that has been prevalent to the point of overwhelming for at least the last fifteen years.

By the mid-1980's, the subject of child sexual abuse and its devastating consequences was covered extensively (by both cover stories and in-depth special reports) in national magazines

(Leo, "Some Day, I'll Cry My Eyes Out": A California Case Prompts a New Awareness of Child Molestation, Time 72 [April 23, 1984]; McCall, The Cruelest Crime, Sexual Abuse of Children: The Victims, the Offenders, How to Protect Your Family, Life 35 [Dec. 1984]; Watson, Sexual Abuse: A Hidden Epidemic, Newsweek 30 [May 14, 1984]), on national television news (Note, The Unreliability of Expert Testimony on the Typical Characteristics of Sexual Abuse Victims, 74 Geo. L.J. 429, 456 n.3 [1985] [noting television news programs that focused on sexual abuse including The Molested Child (ABC World News Tonight, five-part series, week of Nov. 12, 1984), and Sixty Minutes: Cheryl (CBS television broadcast, Nov. 18, 1984) (story focusing on one victim of sexual abuse)]), and in local newspapers (Child Sex Abuse: The Silent Problem, Boston Globe, April 3, 1983; Franklin Man Admits Sex Assaults on Teen, Boston Globe, April 5, 1985, at 22). By the late 1980's and the early 1990's, several prominent celebrities revealed that they had been sexually abused during childhood, fueling further publicity on the issue (A Candid New Biography Tells of the Shocking Childhood that Destroyed Rita Hayworth, People 129 [Nov. 13, 1989]; Bane, A Star Cries Incest: In a Stunning Public Statement, TV's Top-rated Comedienne Claims She Was Sexually Abused as a Child, People 84 [Oct. 7, 1991]; Farrell, Oprah's Crusade: Impelled by Her Tragic Past, Winfrey Draws Up Her Own Child Abuse Legislation, People 68 [Dec. 2, 1991]; Gorman, Incest Comes Out of the Dark: As the Taboos Against Talking About it Crumble, Thousands of Americans, Like Roseanne Arnold, Are Going Public With Their Stories of Anguish and Healing, Time 46 [Oct. 7, 1991]). In 1992, allegations concerning a local priest, Father James Porter, generated enormous publicity concerning child sexual abuse, including detailed discussion of the drastic emotional and psychological damage suffered by Father Porter's many victims ("Prime Time" Tackles Sex-Abuse Case, Boston Globe, July 2, 1992, at 72; Porter Pleads Guilty to Sex-Abuse Charges, Boston Herald, Oct. 5, 1993, at 12; Million $ Awarded Sex Abuse Victims, Boston Herald, Dec. 4, 1992, at 1; Town Secret: The Case of James Porter, Boston Sunday Globe Magazine, Aug. 29, 1993, at 10; Sex Abuse Trials Under Fire: Prosecutors, Doctors Criticize Time Limits on Prosecutions, Telegram & Gazette [Worcester, Mass.], Dec. 12, 1993, at A3). The Father Porter

case, and others like it around the country, gave rise to another Newsweek cover story in 1993. (Press, Sex and the Church: Priests and Abuse, Newsweek 42 [Aug. 16, 1993]). Other cases involving authority figures as accused child molesters also received widespread publicity (Emotions Spill After Tragedy of Sexual Abuse, Telegram & Gazette [Worcester, Mass.], Jan. 20, 1992, at A2; Quincy Man Charges Years of Sex Abuse by Uncle, a Priest, Boston Globe, July 29, 1993, at 1; Ex-altar Boy Claims Sex Abuse, Boston Herald, Aug. 4, 1993, at 25; 2 Victims File Suit vs. Priest in Sex-Abuse Case, Boston Herald, Oct. 21, 1994, at 16). National networks broadcast made-for-television movies and documentaries on the subject of child sexual abuse in 1993 and 1994 (Note, "The Best of All Possible Worlds": Balancing Victims' and Defendants' Rights in the Child Sexual Abuse Case, 63 Fordham L. Rev. 633, 664 n.10 [1994] [noting all major television networks aired documentaries and television movies on the subject of child abuse, including Not in My Family (ABC television broadcast, Feb. 28, 1993); Shattered Trust (NBC television broadcast, Sept. 27, 1993); Ultimate Betrayal (CBS television broadcast, Mar. 20, 1994)]). Newspaper advice columns published letters from readers detailing incidents of child sex abuse and the damages they were suffering as a result of the abuse. See, e.g., Dealing with Sexual Abuse, Boston Globe (May 17, 1987, at 64); Counseling Can Help Heal Scars of Abuse, Boston Sunday Globe Magazine, Oct. 24, 1991, at 78; Her Sister Won't Talk About Sexual Abuse, Boston Globe, May 26, 1994, at 71. Thus, long before the January, 1996, date at issue in this case, the print and broadcast media were saturated with reports of child sexual abuse, including extensive discussion of the victim's difficulties in reporting the abuse and detailed description of its long-lasting psychological ill effects.

In applying the "reasonably should have known" standard at issue in the discovery rule, "[r]easonable notice that . . . a particular act of another person may have been a cause of harm to a plaintiff creates a duty of inquiry and starts the running of the statute of limitations." *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 210 (1990). Where, as in the *Bowen* case, newspaper and magazine articles should have alerted the plaintiff to a causal connection between the earlier conduct and the later harm, the fact that the plaintiff did not yet believe there was such a causal connection is not controlling "because we test the accrual of

[his] cause of action by what a reasonable person in [his] position would have known or on inquiry would have discovered at the various relevant times." *Id.* This "reasonable person" standard takes into account any altered or impaired judgment that a reasonable person would have suffered as a result of the defendant's conduct, *Riley* v. *Presnell,* 409 Mass. 239, 245 (1991), thus allowing for whatever coping mechanisms or other survival strategies sexual abuse victims may adopt that might impair their ability to recognize the causal relationship between past abuse and present psychological problems.

However, the standard does not allow a plaintiff to ignore more than a decade's barrage of publicity from all branches of the media that repeatedly announced, in exhaustive and compelling detail, the fact that children who have been subjected to sexual acts at the hands of adults usually suffer adverse psychological consequences later in life. Throughout all this publicity, the plaintiff was aware that his childhood and adolescent experience, like that of the many victims described in the print and broadcast media, had included extensive and repeated sexual contact with a much older man and that he was, as an adult, then suffering a variety of psychological, emotional, and sexual problems. Whatever in the plaintiff's constellation of psychological ailments prevented him from recognizing the causal connection between these two parts of his personal history on his own, the fact of such a causal connection was provided to him by way of print and broadcast media that had, since the early 1980's, widely publicized the tragic emotional injuries that resulted from adults engaging children in sexual activity.[1]

---

[1]Indeed, the record is clear that the plaintiff himself, without benefit of any therapy addressing the subject of his prior abuse, had absorbed this common knowledge. During his very first visit to a therapist on March 25, 1996, he volunteered the information that he had had sexual encounters as a young teenager, apparently already recognizing on his own that that aspect of his personal history would likely be of significance to his therapist. The plaintiff's complaint was filed on January 21, 1999, making January 21, 1996, the relevant date for statute of limitations analysis. This initial therapy session occurred just two months after that critical date. This record contains no evidence to support the conclusion that anything occurred during the two months following January 21, 1996, that would have added to the plaintiff's understanding of the possible causal relationship between his history of abuse and his ongoing psychological problems. The plaintiff's evident awareness of that possible connection as of March 25, 1996, means that, his coping mechanisms

The question on this summary judgment motion is merely whether the plaintiff, or a reasonable person in his position, should have realized that the defendant's conduct "may" have been a cause of his harm. *Bowen* v. *Eli Lilly & Co., supra.* In the face of overwhelming publicity over a period of many years telling everyone that sexual contact with children almost invariably causes significant long-term psychological harm to those children, the plaintiff should have been aware of at least the potential causal connection between his own lengthy history of repeated sexual encounters with the defendant and his later psychological problems, and this record demonstrates that the plaintiff was actually aware of at least a possible causal connection within two months of the relevant statute of limitations deadline (see note 1, *supra*). The majority opinion focuses almost exclusively on the question whether the plaintiff in fact understood the causal connection and virtually ignores the "reasonably should have discovered" prong of G. L. c. 260, § 4C. Applying that prong, and taking judicial notice of the last two decades of extensive publicity on the issues surrounding child sexual abuse, I believe that the plaintiff's claims are time barred as a matter of law. I therefore respectfully dissent.

---

notwithstanding, the plaintiff had indeed grasped at least the gist of the prior decade's worth of publicity on the subject of child sexual abuse and its potential relation to psychological problems, and there is no reason on this record to conclude that that degree of realization somehow did not occur until after January 21, 1996.