McLaughlin, David A., J.
The plaintiff, Mark J. Martin, commenced this action in December 2004, alleging sexual abuse by the defendants Sullivan and Kelly in 1976 and negligent supervision by the defendants Daily and Smyth. The defendants are all Roman Catholic priests. The defendants Sullivan and Kelly have moved for summary judgment on the basis of the statute of limitations. The defendants Daily and Smyth have moved for partial summary judgment, asserting that there is no basis on the established record for holding them liable with respect to the claims against the defendant Sullivan. For the reasons set forth herein, the motions of the defendants Sullivan and Kelly are DENIED, and tire motion of the defendants Daily and Smyth is ALLOWED.
In deciding the motions for summary judgment, this court considers the facts in the light most favorable to the plaintiff.
The plaintiff was bom on February 17, 1962. He never knew his father and was raised in a household in Brighton with his mother, grandmother, three aunts and a male cousin who was some tweniy years older than the plaintiff. The plaintiff describes the household as “dysfunctional” since his mother, one aunt, and the cousin used alcohol in excess and were physically and verbally abusive to the plaintiff. The plaintiff attended grade school at the St. Columbkille school and was active in the parish. In eighth grade, during the 1975 — 1976 school year, his marks ranged from 85 to 92.
On June 3, 1975, the defendant Kelly was assigned to St. Columbkille parish. Father Kelly used to drive young boys, including the plaintiff, around in his car where he would furnish them with alcohol and marijuana. Some time in the spring of 1976, Fr. Kelly invited the plaintiff to come to his room in the rectory alone to drink and smoke marijuana. During that visit, Fr. Kelly exposed himself to the plaintiff and touched the plaintiffs genitals through his clothes. The plaintiff bolted from the room and ran from the rectoiy. Right after the incident, the plaintiff told four of his friends about “my little run-in with Ed.” The plaintiff *593 never told anyone else about this event until shortly before this lawsuit was filed. After the incident, the plaintiff stopped going for rides with Fr. Kelly and never smoked marijuana with him again.
Before the above incident occurred, the plaintiff had already used alcohol on a number of occasions, becoming intoxicated five or ten times, and had used marijuana “probably less than five times.”
In late August 1976, the plaintiff was going to go to Camp Fatima in New Hampshire to work as a waiter. He was originally to travel to New Hampshire with Fr. Kelly, but Fr. Kelly advised him that his car was full and that he would arrange to have someone else transport the plaintiff. Father Sullivan came to the plaintiffs house to pick him up. The plaintiffs mother told the plaintiff to be on his best behavior because Fr. Sullivan was a “bigshot” in the Catholic Church. (At that time, Fr. Sullivan was the Superintendent of Schools for the Archdiocese of Boston.) After leaving the plaintiffs home, they picked up another boy and left for New Hampshire. While they were travelling up Route 93 and while the other boy was asleep in the back seat, Fr. Sullivan reached across to the front passenger seat and masturbated the plaintiff, causing the plaintiff to ejaculate. Father Sullivan told the plaintiff that “what happened in the car, stayed in the car.” On the return trip from New Hampshire, the plaintiff rode in the back seat. The plaintiff never told anyone about this abuse until shortly before this lawsuit was filed. After this incident, the plaintiff had no further contact with Fr. Sullivan. The plaintiff is unaware if Fr. Sullivan ever molested other children, and there is no basis in the record to indicate that any such activities on the part of Fr. Sullivan were known by church officials.
The plaintiff felt shame and guilt as a result of the above incidents, which feelings he states have “probably” continued for his entire life.
The plaintiff attended Catholic Memorial High School where his grades were Bs, Cs, and Ds. He had played baseball and football for two years in high school but quit because “it wasn’t important anymore.” During high school, the plaintiff experienced depression and anxiety and drank heavily, sometimes being drunk during the school day. The plaintiffs mother was diagnosed with cancer while he was in high school and died in 1982. The plaintiff attended a number of colleges but never obtained a degree. In his teens and twenties, the plaintiff realized that he was an alcoholic; he was in some twenty detox programs as well as holding programs and halfway houses. The plaintiffs drug use escalated to the point where he was using cocaine and heroin from the early 1980s until 1994; heroin was the first drug he turned to in relapse.
Over the years, the plaintiff sought help from several counselors and therapists for anxiety and depression but never mentioned the instances of sexual abuse. If asked, he denied ever having been abused. He stated that when the memories of the abuse would surface, he would push them to the back of his mind and use alcohol or drugs to suppress them.
The plaintiff held various jobs, eventually becoming a security guard for the Harvard University Police from 1990-1994. He was then fired under the university’s “attendance policy” due to problems arising from his alcohol and drug use. Thereafter, he was clean and sober from May of 1994 until January of 2003, at which time he had read articles in the Boston Herald about clergy sexual abuse mentioning St. Columbkille’s. He was worried because he “knew” that people would ask him questions about it. He experienced pressure, anxiety, and depression and wanted a drink “to kill the pain.”
In late 2003 or early 2004, the plaintiff finally told a friend about being-abused by the priests. During that conversation, the plaintiff states that “light dawned on marble head” and that he realized for the first time the effect the abuse may have had on his life (“maybe I’m not just a junkie and a drunk because of a junkie and drunk").
Injuries claimed by the plaintiff as a result of the actions of the defendants Sullivan and Kelly, include— in addition to his drug and alcohol problems — lack of sleep, anxiety, depression, and an inability to form relationships or to trust other people.
The dispositive issue with respect to the plaintiffs claims against the defendants Sullivan and Kelly is whether the plaintiff commenced this action within the time period of the applicable statute of limitations.
The statute of limitations which governs actions for assault and battery alleging sexual abuse of a minor is three years as set forth in G.L.c. 260, Sec. 4C. (Under the statute, that period is tolled until the plaintiff reaches majority.) The statute provides, in relevant part, that the period of limitations begins when the plaintiff discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by the defendant’s conduct, thereby importing the discovery rule into claims such as those of the plaintiff. See Ross v. Garabedian, 433 Mass. 360, 362-63 (2001). A plaintiff relying on the discovery rule to argue that his claim was delayed due to inability to recognize the cause of his injuries bears the burden of proving “both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge.” Doe v. Creighton, 439 Mass. 281, 283 (2003). Although knowledge and reasonableness are generally questions of fact [Riley v. Presnell, 409 Mass. 239, 240 (1991)], a defendant may obtain summary judgment unless the plaintiff shows “a reasonable expectation of proving that the claim was timely filed.” Koe v. Mercer, 450 Mass. 97, 101 (2007), citing Doe v. Creighton, supra at 284. Under the standards enunciated in the above cases, this court concludes that the plaintiff here has made the requisite showing to avoid summary judgment against him.
*594 The inquiry on summary judgment involves two distinct elements: the plaintiffs actual lack of causal knowledge and the objective reasonableness of that lack of knowledge. With respect to the first element, the court must determine if a material question of fact exists as to whether the plaintiff had “(1) knowledge or sufficient notice that [he] was harmed and (2) knowledge or sufficient notice of what the cause of the harm was.” Ross v. Garabedian, supra at 363, citing Riley v. Presnell, supra at 244, quoting Bowen v. Eli Lilly & Co., 408 Mass. 204, 208 (1990). In this regard, the Ross case is instructive, if not dispositive.
The plaintiff in Ross was thirteen years old in 1968 when he began a sexual relationship with the defendant that lasted until 1971. 433 Mass. at 361. The relationship produced contemporaneous feelings of shame and guilt in the plaintiff. Id.
Over the next thirty years, the plaintiff suffered psychological and emotional problems. The plaintiff sought counseling in 1978 regarding his relationship with his girlfriend, but the subject of the abuse by the defendant was never raised during those sessions. In March of 1996, the plaintiff began seeing a new therapist; at that time, he considered his encounters with the defendant “wrong and shameful, primarily because of the homosexual nature of the exchange.” Id. However, the plaintiff did not begin to realize a possible connection between his symptoms and his experience with the defendant until 1997. Id. The therapist stated that the plaintiffs prior lack of causal knowledge “stemmed from ‘unconscious coping or blocking mechanisms’ commonly found in victims of sexual abuse.” Id. The complaint in that action was filed on January 21, 1999.
The Ross court ruled that while the plaintiff was at all times aware of the events at issue and the feelings of shame they produced, there were issues of fact regarding when the plaintiff had sufficient knowledge or notice so that he reasonably should have known that the defendant’s acts were the cause of his harm. Id. at 363-64.
The court rejected the defendant’s argument that the plaintiffs contemporaneous sense of shame was sufficient to trigger the statute of limitations, ruling that in order to be entitled to summary judgment, a defendant must show injuries “more extensive and tangible than the shame and sense of wrong that are involved here.” Id. at 365-66.
The Ross court also refused to rule that the plaintiff “should have linked the emotional difficulties in his life with the defendant’s misconduct decades ago.” Id. at 366.
The record suggests that there are other incidents from the plaintiffs childhood (e.g., “explosions” and “raging” between the plaintiffs parents due to his father’s alcoholism; drug and alcohol use during his early adolescence) that he might reasonably have identified as the source of his problems. These reasons, together with the plaintiffs psychological coping mechanisms prevent us from concluding that, as a matter of law, the plaintiff knew or should have known that he suffered harm caused by the defendant to trigger the statute of limitations.

Id.

The parallels between the case now before this court and the Ross case are patent: the “dysfunctional” family; the parent’s alcoholism; the plaintiffs early drug and alcohol use; and the coping mechanisms of pushing memories of the events to the back of his mind and using drugs and alcohol to suppress them.
Finally, the court notes that in its most recent case involving these issues, Koe v. Mercer, 450 Mass. 97 (2007), the Supreme Judicial Court repeatedly emphasized that the plaintiff there had been told more than three years before commencing the action that there was a connection between his symptoms and the sexual abuse. Here, the plaintiff never discussed the abuse with any adult until 2003; thus, there is no such event that would trigger the start of the limitations period.
Accordingly, this court rules that the plaintiff has made the requisite showing that he lacked actual causal knowledge until a time less than three years prior to the commencement of this action.
With respect to the objective “reasonableness of the plaintiffs lack of knowledge, the standard is that of a reasonable person who has been subjected to the conduct which forms the basis for the plaintiffs complaint." Riley v. Presnell, supra at 245. Since the standard is “objective,” personal character traits, educational history and cultural backgrounds are generally immaterial. Doe v. Creighton, supra at 284. Citing Doe, the court in Koe v. Mercer, supra, considered three factors relevant to the determination of “objective reasonableness”: (a) the timing of the abuse, (b) the perpetrator’s attempts to cover it up, and (c) whether the abuse was a “watershed event” in the plaintiffs life.
The question regarding “the timing of the abuse” is whether the age and maturity level of the plaintiff when the abuse occurred may have played a role in preventing him from recognizing a causal relationship. The plaintiff here was fourteen and a half years of age at the time the events took place and had not yet begun high school. There is nothing in the record to indicate that he had a great deal of maturity; indeed, his use of alcohol and marijuana prior to the events at issue shows a distinct lack of maturity. Compare Koe v. Mercer, supra (plaintiff was mature enough to tell parents of the abuse and to demand that perpetrator be called to account for his actions), and Doe v. Creighton, supra (plaintiff was seventeen years old when the abuse occurred at about the time of her high school graduation).
*595 With respect to the perpetrator’s attempts to cover up the abuse, the plaintiff here was told by a priest who was the Superintendent of Schools for the Archdiocese of Boston that “what happened in the car, stayed in the car.” This intimidation clearly supports the plaintiffs position on this issue. Compare Koe v. Mercer, supra (parents of the plaintiff were not asked to “remain silent forever”).
The third element considered by the courts in making a determination whether the plaintiffs lack of actual causal knowledge was objectively reasonable is whether the abuse was a “watershed event” in the plaintiffs life. Here, the plaintiffs life appears merely to have continued its downhill trajectory after the time of the abuse. Given the plaintiffs use of alcohol and drugs prior to the events at issue here, the continuation and acceleration of substance abuse — with attendant anxiety and depression — cannot be seen as a “watershed event.” Compare Koe v. Mercer, supra (plaintiff began using drugs and alcohol shortly after the abuse; ran away because he felt that his parents’ efforts to obtain redress were inadequate; and lived on the streets for a year and a half, stealing to support himself), and Doe v. Creighton, supra at 282, 285 (upon entering the convent immediately following the end of her relationship with the defendant, plaintiff at once experienced depression, grief, and shame; the court stated that these factors should have rendered the connection between the abuse and plaintiffs symptoms “particularly obvious”). [If by a “watershed event” is meant a dramatic change in the plaintiffs life, the one occurrence in the record that would qualify is the plaintiffs resumption of drug and alcohol use — after nearly nine years of sobriety — on encountering the newspaper publicity about sexual abuse at St. Columbkille’s.] Thus, the abuse itself was not such a “watershed event” as would give the plaintiff notice that his problems and the defendants’ misconduct were causally related.
Finally, this court notes that an expert’s report with respect to the objective reasonableness of the plaintiffs lack of causal knowledge must be based on the “hypothetical member of the general population required by law.” Koe v. Mercer, supra at 106, citing Doe v. Creighton, supra at 286. Where the delay in recognizing harm is attributable to circumstances unique to a particular plaintiff, that does not suffice to toll the period of limitations. Thus, in Koe, an expert’s opinion which focused on “the plaintiffs ability to make the connection rather than the ‘benchmark reasonable person’ subject to the conduct that forms the grounds for the complaint” was held not to fulfill the standard of the hypothetical member of the general population required bylaw. 450 Mass. at 106 (emphasis in the original). In contrast, the opinion of Dr. Nineberg submitted by the plaintiff in opposition to the motions does substantiate that standard. Dr. Nineberg opined that, to a reasonable degree of medical certainty, the plaintiff had “knowledge or sufficient notice that he was harmed by the serial sexual molestation beginning in approximately 2003.” Dr. Nineberg further stated:
Clinically, it is known that many individuals in childhood or adolescence may appreciate that behavior towards them is highly unusual, unexpected, or inappropriate, including sexual behavior, without appreciating that they were harmed by this behavior or even having any clear knowledge of any effects of this behavior on them. This is standard clinical thinking in the field of psychology and psychiatry. This is consistent with many conversations I have had with experts in the field. This is consistent with clinical research on memory and sexual abuse. Finally, this is consistent with my own considerable clinical and forensic experience over the past sixteen years in this field.
The defendants Sullivan and Kelly have failed to sustain their burdens of demonstrating that there is no dispute of material fact. See Kourouvracilis v. General Motors, 410 Mass. 706 (1991).
As to the motion for partial summary judgment of the defendants Daily and Smyth, those defendants have sustained that burden as there is no evidence to warrant a finding of negligence on the part of either of those defendants.
Order
The motions for summary judgment of the defendants Sullivan and Kelly are DENIED.
The motion for partial summary judgment of the defendants Daily and Smyth is ALLOWED.