Pasquale, Gregg J., J.
The plaintiff, Edwin L. Ham-merberg (“the plaintiff’), brings this action against Boy Scouts of America Corp., Mohegan Council, Inc. (“Mohegan”), and Boy Scouts of America (“Boy Scouts”) (collectively, “the defendants”) alleging that he was sexually abused by his scoutmaster, Lawrence Wiles (“Wiles”). Now before the court is the defendants’ Motion for Summary Judgment. For the following reasons, the defendants’ motion is ALLOWED.
BACKGROUND
The following facts are the undisputed facts contained in the record, viewed in the light most favorable to the non-moving party. See United States Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
The Boy Scouts is a non-profit organization that was chartered by the United States Congress in 1916. This program provides a framework by which young males can participate in activities designed to teach patriotism, self-reliance, courage, and kindred values. In order to fulfill its congressional mandate, the Boy Scouts issues charters to councils, that consist of a group of volunteers who incorporate as a non-profit organization in their respective states. These councils support scouting at a local level. Mohegan is one such council. These councils then offer the Scouting program to existing chartered organizations, such as churches, schools, and more.
According to its charter, the purpose of the BSA is to “. . . promote, through organization, and cooperation with other agencies, the ability of boys to do for themselves and others, to train them in Scoutcraft, and to teach them patriotism, courage, self-reliance, and kindred virtues ...” The BSA’s by-laws state that “in achieving this purpose, emphasis shall be placed upon its educational program and the oaths, promises, and codes of the Scouting program for character development, citizenship training, and mental and physical fitness.” The Constitution of the Mohegan Council states that its purpose “is to promote, supervise and administer the educational and recreational program of the Boy Scouts of America for character development, citizenship training and physical fitness
Chartered organizations can organize a Scouting program by applying for a charter to authorize the use of the Scouting program in order to create a boy scout troop. After approval, the chartered organization forms a troop committee that is responsible for promoting the troop and recruiting participants. This committee usually consists of parents of joining members. The committee also selects the individual, or individuals, known as the scoutmaster, who will lead the troop.
The plaintiff joined Troop 99 located in Worcester, Massachusetts as a nine-year-old boy. The scoutmaster of Troop 99 was Wiles. As expected, the plaintiff became acquainted with Wiles through his participation in Troop 99. The plaintiffs mother encouraged further association with Wiles outside of scouting so that the plaintiff could have a male figure in his life.
After a period of time, approximately during the years 1961-1964, when the plaintiff was nine to twelve years old, Wiles made sexual advances towards the plaintiff. These advances occurred during non-scouting interactions. Wiles’s sexual abuse of the plaintiff occurred primarily at a steam bathhouse located in Charlton, Massachusetts. Wiles took the plaintiff to this steam bathhouse on a weekly basis for approximately two years. This sexual abuse consisted of oral and/or anal sex. Wiles died on March 15, 1989, after serving as a scoutmaster for thirty years.
Later, sometime during the years of2009-2011, the plaintiff developed severe anxiety when driving past a particular building in Charlton, Massachusetts. The plaintiff thereafter recalled that this building was the steam bathhouse where Wiles had sexually abused him. Prior to this, the plaintiff had no memory of the abuse.
A licensed psychiatrist, Dr. James A. Chu (“Dr. Chu”), submitted an affidavit to this court stating that sexually-abused victims commonly suffer from what is known as traumatic amnesia, where victims forget their traumatic experience, but recall it at a later date. Dr. Chu further opined to a reasonable degree of medical certainty that the plaintiffs symptoms are consistent with the symptoms of traumatic amnesia.[2]
DISCUSSION I. Standard of Review
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). A party seeking summary judgment may satisfy its burden of demonstrating the absence of triable issues of fact either by submitting affirmative evidence demonstrating an entitlement to relief or the opposing party’s lack of entitlement, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of their case. Flesner v. Technology Communications Corp., 410 Mass. 805, 809 (1991). Once the moving party establishes the absence of a triable issue, the non-moving party must respond by setting forth specific facts showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e); Kourouvacilis, 410 Mass. at 716. A party cannot defeat a motion for summary judgment by simply resting on his or her pleadings and making mere assertions of disputed facts. Lalonde v. Eissner, 405 Mass. 207, 209 (1989).
*56 II. Analysis
The defendants move for summary judgment arguing that: (1) the plaintiffs claims are barred by the statute of limitations; (2) the defendants cannot be liable for the actions of local troops; (3) the defendants’ liability, if any, must be limited to $20,000. The court will address each of these arguments in turn.
A. Statute of Limitations
The applicable statute of limitations, G.L.c. 260, §2A, states, in pertinent part, that: “actions of tort. . . to recover for injuries . . . shall be commenced only three years next after the cause of action accrues.” The general rule in tort actions is that a cause of action accrues when the plaintiff is injured. Riley v. Presnell, 409 Mass. 239, 243 (1991). Thus, the defendant argues that under this general rule, the plaintiffs claims have long since accrued.
The plaintiff, by contrast, rightly states that the accrual of his claim is governed by the so-called “discovery rule.” Under the discovery rule, a cause of action for an inherently unknowable wrong accrues when the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant’s conduct. See Ross v. Garabedian, 433 Mass. 360, 363 (2000). At the summary judgment stage, the court must determine “if a material question of fact exists as to whether the plaintiff ‘had (1) knowledge or sufficient notice that [he] was harmed and (2) knowledge or sufficient notice of what the cause of harm was.’ ” Id., quoting Phinney v. Morgan, 39 Mass.App.Ct. 202, 209 (1995) (alteration in original). See also Riley, 409 Mass. at 240 (“[W]e recognize that ordinarily when a plaintiff knew of should have known of [his] cause of injury is a factual issue to be decided by the trier of fact”).
Here, the plaintiff alleges that he only recently (within the years of 2009-2011) gained knowledge that he was harmed by Wiles, and in turn, the defendants. The plaintiff claims that his memory was repressed due to a condition known as traumatic amnesia, and therefore, he did not know he was harmed until later in life. Furthermore, he claims that he did not know that Wiles, and in turn the defendants, were the cause of this harm. The court agrees that this issue presents a question of fact as to whether the plaintiff knew, or should have known, that he was harmed. See Ross, 433 Mass. at 366 (“A rational finder of fact could find that the plaintiff . . . felt shame or sense of wrong” at the time of the abuse, “but he was not aware that he had suffered any appreciable or legally recognizable ‘harm’ ”); Armstrong v. Lamy, 938 F.Sup. 1018, 1040 (D.Mass. 1993) (plaintiffs symptoms of being “uncomfortable,” “scared,” and “nervous,” at time of attacks, pain on arm as a resulted from being gripped, and insomnia during period of attacks, was not enough to show that he knew of or should have known he had been harmed, as “a finder of fact could reasonably find that the[ ] fleeting moments of physical pain were not perceived by [the plaintiff] at the time of ‘injury’ ”).[3]
Furthermore, the court agrees that even assuming the plaintiff was aware of the harm he suffered from the abuse (as he was battling with anxiety, depression, and alcohol abuse), a question of fact remains as to the second part of the discovery rule, i.e., whether the plaintiff had notice of what the cause of harm was.See Ross, 433 Mass. at 363 (summary judgment not appropriate as it was “unclear whether . . . the plaintiff perceived a causal connection between a defendant’s misconduct and the plaintiffs alleged psychological harm”); Eilert v. Carey, 8 Mass. L. Rptr. 491 at *6 (Mass.Super. 1998) (Toomey, J.), accord, Ross, 433 Mass. at 366 n.8 (summary judgment not appropriate as issues of material fact exist regarding when plaintiff made a causal connection necessary to trigger statute of limitations). Given these material facts in dispute, summary judgment cannot be granted on this basis.
B. Boy Scouts and Mohegan’s Liabilfly for the Actions of Troop 99
Next, the defendants claim that they cannot be held liable for the conduct of local troops that implement the scouting program. In support of this proposition, the defendants cite to multiple decisions outside of the Commonwealth[4] that have essentially held that the evidence before them failed to establish an agency relationship between the Boy Scouts and local council with the individual local troops or scoutmasters. See e.g., Boy 1 v. Boy Scouts of Am., 993 F.Sup.2d 1367, 1374-76 (W.D.Wash. 2014); JohnRoe #1 v. Boy Scouts of Am., 84 A.3d 443, 456-57 (Conn.App.Ct. 2014).[5]
First, the court will address this argument in terms of the plaintiffs claims of negligent hiring (Counts I and II). The doctrine of negligent hiring provides that an employer whose employees are brought in contact with members of the public in the course of the employer’s business has a duty to exercise reasonable care in the selection and retention of employees. Foster v. Loft, Inc., 26 Mass.App.Ct. 289, 290 (1988). Thus, “[a]n employer must use due care to avoid the selection or retention of an employee whom he knows or should know is a person unworthy, by habits, temperament, or nature to deal with the persons invited to the premises by the employer.” Id. at 290-91.
In the instant case, which is factually analogous to federal court decisions regarding this issue, the defendants did not select or hire Wiles to be the scoutmaster of Troop 99. The committee (that is formed after the chartered organization takes interest in the Scouting program) is the body that selects the scoutmaster. There is no evidence in the summary judgment record that the Boy Scouts or Mohegan had the right to control, to select, or even discharge, a scoutmaster. See M.L. v. Civil Air Patrol, 806 F.Sup. 845, 849 (E.D.Mo. 1992) (chartered authority hired scoutmaster and had authority to discharge scoutmaster if desired; therefore “[Boy Scouts] did not exercise the *57 control necessary to select or retain [abuser] in order to establish plaintiffs’ cause of action for negligent hiring or retention”); Wilson v. Boy Scouts of Am., 784 F.Sup. 1422, 1425 (E.D.Mo. 1991) (“[Boy Scouts] similarly does not choose or directly supervise the scoutmaster or other volunteers at a local level. If anything the relationship is more remote”); John Roe # J, 84 A.3d at 456 (“[Boy Scouts] were not in control of the situation and [ ] [abuser] is the person responsible for the plaintiffs injuries, not the defendants”). Accordingly, the plaintiff has failed to establish a necessary element of his claim, and summary judgment must be allowed as to Counts I and II.
The remaining counts—Counts III, IV alleging negligent infliction of emotional distress; Counts V and VI alleging breach of fiduciary duty; and Counts VII and VIII alleging negligence—surround the defendants’ alleged failure to have in place policies and supervision to safeguard members of the scouting program. As these allegations relate to the defendants’ own negligence, rather than Wiles’s, the application of the agency analysis has no bearing on these counts.[6]
C. Charitable Immunily
Finally, the defendants argue that even if liability is found for any of the acts alleged by the plaintiff, their liability must be limited pursuant to G.L.c. 231, §85K, which limits the liability of charitable institutions to $20,000 if the tort was committed in the course of an activity carried out to accomplish the purpose of the charitable organization.
The purpose of the doctrine of charitable immunity arose from the theoiy that the funds of a charity should not be depleted for reasons other than those envisioned by the charity, and therefore, charities should be immune from paying damages stemming from tort liability. McDonald v. Massachusetts Gen. Hosp., 120 Mass. 432, 436 (1876); English v. New England Medical Center, Inc., 405 Mass. 423, 424-25 (1989). Thus, a common-law rule arose granting charities absolute immunily from liability for torts committed in furtherance of its charitable purpose. See McKay, 272 Mass. 121, 123 (1930).
The Legislature, however, modified this doctrine in 1971 with the adoption of G.L.c. 231, §85K. This statute allowed tort damages against a charity up to $20,000 “if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation.” G.L.c. 231, §85K. However, this statute does not have retroactive effect and therefore liability for torts committed prior to the effective date of the statute continue to be barred by the common-law rule of charitable immunity. Ricker v. Northeastern Univ., 361 Mass. 169, 171-72 (1972).
The plaintiff responds by stating that this cap on damages is not applicable as “being raped for years . . . seems wholly inconsistent with directly accomplishing [the] Defendants’ charitable purposes . . .”[7] The plaintiff incorrectly frames the issue. The pertinent issues relating to the plaintiffs claims are whether the defendants acted beyond their charitable purpose in: negligently “hiring” Wiles; failing to investigate Wiles and other scoutmasters; and failing to have policies in place to check the character and fitness of scoutmasters. To determine whether these activities were charitable, the court must focus its attention on the commercial nature of the activity. See McKay v. Morgan Memorial Co-Operative Indus. & Stores, Inc., 272 Mass. 121, 123 (1930) (charitable immunity doctrine does not apply “if negligence occurred in the conduct of business for profit . . .”) (emphasis added). See also Grueninger v. President & Fellows of Harvard College, 343 Mass. 338, 340 (Mass. 1961) (charity immune completely except for things that are purely commercial in nature). Here, there is no allegation that these activities were commercial in nature, and therefore, the charitable immunity doctrine still protects the defendants from any tort claims. See Martin v. Kelley, 18 Mass. L. Rptr. 121 at *8-10 (Mass.Super. 2004) (Agostini, J.) (church diocese is immune from suit for negligent hiring and supervision of priests who committed sexual abuse as the diocese was not engaged in commercial activity. No claim made that hiring, supervising or retaining were commercial activities).
In light of the above discussion, even assuming, arguendo, that the defendants were negligent in their supervision of scoutmasters, process of selecting scoutmasters, and lack of protocol to inspect potential scoutmasters, this court finds that they are protected by the common-law charitable immunity doctrine as the allegations of sexual abuse occurred during the years of 1961-1964,[8] before the Legislature modified the charitable immunity doctrine in 1971. Accordingly, judgment must enter for the defendants as a matter of law.
ORDER
It is therefore ORDERED that the defendants’ motion for summary judgment is ALLOWED. Judgment shall enter for the defendants, dismissing the plaintiffs complaint.

 This affidavit was submitted through a Motion to Expand the Summary Judgment Record, pursuant to Mass.R.Civ.P. 56(e). The defendants oppose this motion as Dr. Chu’s “speculative musings" have no bearing on the majority of the summary judgment issues. The court finds that Dr. Chu’s affidavit is especially pertinent to the summary judgment motion in regard to the statute of limitations. Accordingly, the plaintiffs Motion to Expand the Summary Judgment Record is ALLOWED.

 The defendants cite to several courts outside this jurisdiction to support their allegation that the plaintiff must submit expert testimony in order to utilize the discovery mle in this case. Although the law in the Commonwealth on whether the plaintiff must produce expert testimony is not clear, the court has allowed the plaintiffs motion to expand *58 the summary judgment record to include an affidavit from an expert.

 The court could not locate, nor do the parties cite to, any authority from the courts of the Commonwealth on this issue.

 The plaintiff does not address this argument in his memorandum in opposition to the defendants’ motion for summary judgment.

 The court discerns no allegation in the plaintiffs complaint that the defendants should be held vicariously liable for Wiles’s actions. To the extent that the remaining counts do allege vicariously liability, those counts would also fail. See Boy 1, 993 F.Sup.2d at 1374 (council and Boy Scouts cannot be held vicariously liable for acts of scoutmaster as there was no evidence presented that they manifested control over the scoutmasters’ activities).

 The plaintiff does not contend that the defendants are not a charitable organization.

 In the record before the court, there are several different dates relating to the allegations of sexual abuse. None of these dates are before 1971. "1116 court refers to these dates as the time period of the alleged abuse as in the statement of facts the plaintiff admits to the following: (1) that the plaintiff was born in 1952; (2) that the sexual abuse occurred when he was between the ages of nine and twelve. Given these admissions, it follows that the abuse occurred between 1961 and 1964.