******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN ROE #1 *v.* BOY SCOUTS OF
AMERICA CORPORATION ET AL.
(AC 35155)

Lavine, Keller and Schaller, Js.

Argued October 17, 2013—officially released January 21, 2014

(Appeal from Superior Court, judicial district of Hartford, Hon. Jerry Wagner, judge trial referee [motion to determine sufficiency of discovery responses]; Schuman, J. [summary judgment, motions to reargue].)

*Frank C. Bartlett*, *Jr.*, for the appellant (plaintiff).

*Philip T. Newbury*, *Jr.*, with whom, on the brief, was *Ondi A. Dybowski*, for the appellees (named defendant et al.).

*Opinion*

LAVINE, J. The plaintiff, John Roe #1, appeals from the summary judgment rendered by the trial court in favor of the defendants, Boy Scouts of America Corporation (Boy Scouts) and Connecticut Rivers Council, Inc. (council). On appeal, the plaintiff claims that the trial court (1) abused its discretion by sustaining the defendants' objection to his discovery request and erred by (2) granting the defendants' motion for summary judgment and (3) denying his motions for reconsideration. We affirm the judgment of the trial court.

The plaintiff served the defendants with a summons and complaint on September 28, 2009. The plaintiff's complaint sounds in six counts. The first three counts allege corporate negligence, breach of duty on the basis of a fiduciary or confidential relationship, and breach of special duty of care owed to children, respectively against the defendants. At all times relevant, the plaintiff was a minor living in Connecticut.

The plaintiff also alleged that that the defendant James W. Harris III[1] was an agent of the defendants, acting as a troop leader and campmaster who supervised and participated in camping trips with members of the Boy Scouts such as the plaintiff. The plaintiff further alleged that Harris took the plaintiff on numerous camping trips sponsored by the defendants during which he subjected the plaintiff to sexual abuse, molestation, and assault.[2]

As a result of Harris' sexual abuse, the plaintiff alleged that he suffered physical pain, humiliation, degradation, fear, extreme emotional distress, anger, confusion, among other negative emotions, and was deprived of the opportunity to enjoy his childhood and adolescence. Consequently, the plaintiff alleged that he was required to expend considerable sums for medical and psychiatric care in the past and may do so in the future. The defendants denied the material allegations of the complaint and asserted the special defense that each count of the complaint failed to state a cause of action for which relief can be granted.

On or about August 12, 2010, the plaintiff served interrogatories and requests for production on the defendants. On or about December 20, 2010, the Boy Scouts filed responses and objections to the discovery requests. The parties appeared before the court, *Hon. Jerry Wagner*, judge trial referee, to resolve their discovery dispute.

On April 30, 2012, the defendants filed a motion for summary judgment as to the three counts of the complaint alleged against them. The plaintiff filed an objection to the motion, and the parties thereafter presented arguments to the court, *Schuman, J.* Judge Schuman granted the defendants' motion for summary judgment in a memorandum of decision filed on August 16, 2012.[3]

The plaintiff filed motions to reargue, which Judge Schuman denied. Thereafter, the plaintiff appealed.

I

The plaintiff first claims that the court improperly sustained the defendants' objection to his "request for documents maintained by the defendants evidencing their knowledge of the pervasiveness of sexual abuse within scouting for the time prior to the plaintiff's abuse." We conclude that Judge Wagner properly exercised his discretion with regard to discovery by limiting the scope of the plaintiff's initial discovery request.

The plaintiff's claim centers on interrogatory 14 of the plaintiff's discovery requests. The plaintiff's request and the defendants' December 20, 2012 response to the discovery follow:

"14. Please state whether [the Boy Scouts have], *at any time*, conducted or requested any reports, surveys, studies, analyses, research or other similar work regarding sexual abuse in the Boy Scouts. If so, as to each report, survey, study, analysis, research or other similar work (collectively, 'report'), please state:

"(a) the title or designation of the report;

"(b) the author or authors of the report;

"(c) the date or dates of the report;

"(d) to whom the report was given or distributed; and

"(e) a description of the content of the report.

"RESPONSE: The defendant objects to this interrogatory on the ground that it is overly broad, unduly burdensome, vague, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects to this interrogatory insofar as it seeks materials protected by personal privacy rights, the attorney-client privilege, attorney work-product and materials prepared in anticipation of litigation.

"Without waiving this objection, the defendant responds that it has funded national conferences and studies regarding sexual abuse and has produced literature and other information aimed at educating adults, scouts and their parents as to the warning signs of sexual abuse and how to minimize the risk." (Emphasis added.)

The parties appeared before Judge Wagner on November 18, 2011, to resolve their discovery disputes. In response to the argument of the plaintiff's counsel, the court stated with regard to interrogatory 14: "What do you want, the history of the . . . beginning of the Boy Scouts?" Counsel for the plaintiff responded: "If they have it, yes, Your Honor." Counsel for the plaintiff further stated that "we are asking for defendants to turn over their knowledge about sexual abuse, the very

subject of this lawsuit. I don't think that's overly broad or unreasonable, Your Honor." The court thought that the request was overly broad and instructed the plaintiff's counsel to narrow his approach.

Three times the court stated that interrogatory 14, in asking for the history of the Boy Scouts' knowledge of sexual abuse, was overly broad and that the plaintiff should narrow his approach "to what might be considered responsive and competent evidence in the case."[4] The plaintiff's counsel did not voluntarily narrow the scope of interrogatory 14. The court therefore ordered that if the Boy Scouts "have an archive in Connecticut dealing with their experiences . . . for the last ten years, because it goes back to [the] seventies or so on, and it's in written form on their experiences with sexual complaints and how it's been handled or so on. Protocol, I guess you're entitled to have it. If he hasn't got it, you're . . . not entitled to have it. You'll get it on deposition."[5] During the course of argument, the defendants made clear what information they had and what information they specifically had disclosed to the plaintiff, particularly with respect to Harris.

Our Supreme Court has "long recognized that the granting or denial of a discovery request rests in the sound discretion of the [trial] court, and is subject to reversal only if such an order constitutes an abuse of that discretion. . . . [I]t is only in rare instances that the trial court's decision will be disturbed. . . . Therefore, we must discern whether the court could [have] reasonably conclude[d] as it did." (Internal quotation marks omitted.) *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 7, 826 A.2d 1088 (2003).

"In any civil action . . . where the judicial authority finds it reasonably probable that evidence outside the record will be required, a party may obtain in accordance with the provisions of this chapter discovery of information or disclosure, production and inspection of papers, books or documents material to the subject matter involved in the pending action, which are not privileged, whether the discovery or disclosure relates to the claim . . . of the party seeking discovery . . . and which are within the knowledge, possession or power of the party or person to whom the discovery is addressed. Discovery shall be permitted if the disclosure sought would be of assistance in the prosecution . . . of the action and if it can be provided by the disclosing party . . . with substantially greater facility than it could otherwise be obtained by the party seeking disclosure. . . ." Practice Book (2011) § 13-2.

In his appellate brief, the plaintiff claims that a plaintiff in a negligence action has the right to inquire as to what the defendant knew or should have known regarding the foreseeability of harm of the same general nature as that sustained by the plaintiff. See *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523,

539, 51 A.3d 367 (2012) (duty of care may arise from circumstances under which reasonable person, knowing what he knew or should have known, would anticipate harm of general nature of that suffered as a result of failure to act). The plaintiff further claims that the Boy Scouts had a duty to provide safeguards that protected youth in scouting from abuse at the hands of adult scouting volunteers. He sought discovery aimed at determining what the Boy Scouts knew about the pervasiveness of sexual abuse in scouting in the entire country. He claims that the information was necessary to determine whether the defendants had a duty to protect him specifically.

The plaintiff further argues that "[i]f the evidence presented showed that the Boy Scout[s] . . . did not know or should not have known that *any* youth within scouting had suffered sexual abuse at the hands of adult scouting volunteers, then that knowledge, or lack thereof, may militate against imposing a duty to protect youth within scouting. If, however, the evidence were to show that prior to the abuse suffered by the plaintiff, in the time period of *1965-1985*, the Boy Scou[ts'] . . . actual knowledge of in excess of 1,200 adult volunteers who had perpetrated acts of sexual abuse on minor scouters, a rate of greater than one adult volunteer every week for a twenty year period, that knowledge would be relevant to the court's determination that the Boy Scout[s] . . . owed a duty to protect youth in scouting such as the plaintiff." (Emphasis added; footnote omitted.)

We disagree with the premise of the plaintiff's claim that the court abused its discretion by sustaining the defendants' objection to his discovery requests as embodied in interrogatory 14. Although the court limited the scope of the interrogatory to the defendants' activities in Connecticut for the prior ten years, it did not by any means prohibit in toto the plaintiff from seeking the information he wanted. The court merely exercised its discretion to limit the scope of interrogatory 14 by time and place. Moreover, there was nothing to prohibit the plaintiff from filing a request for additional discovery following its receipt of the defendants' supplemental discovery responses, which he failed to do. See footnote 5 of this opinion. We, therefore, discern no abuse of discretion in the court's ruling with respect to its discovery orders.[6]

## II

The plaintiff claims that it was improper for the court to grant the defendants' motion for summary judgment because the defendants had a duty to protect him from Harris' sexual assaults. We disagree.

The following facts and procedural history are relevant to the plaintiff's claim. On or about April 30, 2012, the defendants filed a motion for summary judgment

claiming that they could not be held vicariously liable for the sexual abuse of the plaintiff because they owed the plaintiff no special duty of care and the plaintiff's loss was not foreseeable under the circumstances of this case.

In their memorandum of law in support of their motion for summary judgment, the defendants represented that the plaintiff was born in 1991 and never knew his biological father. His mother met Harris, a coworker, when the plaintiff was approximately seven years old. Harris moved into the plaintiff's home shortly after he began dating the plaintiff's mother and married her in 1999. Soon after Harris moved into the plaintiff's home, he took the plaintiff on a camping trip to Camp Curtis S. Read in upstate New York. At the time, the plaintiff was a Cub Scout and Harris was an assistant scoutmaster for Boy Scout Troop 27. According to the plaintiff, during the camping trip, he shared a tent with Harris, and he awakened to find Harris fondling his penis. Thereafter, Harris regularly molested the plaintiff at various locations including their home, in Harris' truck, and during camping trips to Camp Johnson.[7] As the plaintiff grew older, he resisted Harris' advances, and Harris' abuse became more aggressive.

On June 14, 2007, following an altercation with Harris, the plaintiff left home and went to the home of his girlfriend where he was urged to inform the police of the abuse, which he did. Thereafter, Harris was arrested. Prior to reporting Harris to the police, the plaintiff had not told anyone of the sexual abuse, except his girlfriend. The defendants represented that until a newspaper article concerning Harris' arrest came to their attention, neither of the defendants knew that he had abused the plaintiff or that he had engaged in inappropriate sexual contact with minors. When the Boy Scouts learned of Harris' arrest, the director of field service sent letters to Harris and the local chartered organization revoking Harris' registration as a volunteer and prohibiting him from any further involvement in scouting.

The Boy Scouts claim that its organizational structure is pertinent to the issue of liability in this case. The defendants submitted two affidavits in support of their motion for summary judgment: one from Martin Walsh, manager of the membership impact department of the Boy Scouts of America,[8] and one from Harry L. Pokorny, the scout executive of the council.[9] According to the Boy Scouts, it is a national volunteer organization that charters local Boy Scout troops at the request of local councils. See footnote 8 of this opinion. The local chartered organization selects and retains its own volunteers to administer the program. The defendants neither direct nor supervise the activities of the local troops. The individual units are unincorporated associations, and the troops and their scoutmasters or volunteer

advisers are responsible to their own troop committees. Although the Boy Scouts make the scouting program available, the local charter organization chooses the parts of the program best suited to the needs of its youth.

In the trial court, the defendants argued that there was no agency relationship between them and Harris. They contended that, under Connecticut law, no institutional defendant has been held vicariously liable for the sexual abuse of a minor because such acts do not further the organization's business. See, e.g., *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 268 F. Supp. 2d 139, 142 (D. Conn. 2003) (respondeat superior not applicable to hold church liable). The defendants also argued that they owed no duty to the plaintiff and did not know of Harris' sexual abuse until the plaintiff disclosed it to the police.

The plaintiff objected to the defendants' motion for summary judgment and submitted his own affidavit, in which he attested that the factual allegations of his complaint were accurate and true to the best of his knowledge,[10] and that "[t]hroughout my time in scouting, I was not provided any education, training, instruction or materials on the subject of youth protection, the dangers of sexual abuse in scouting, and/or the prevalence of sexual abuse in scouting, which I now know the Boy Scouts of America were well aware of and were collecting significant amounts of records and data on . . . . In addition, throughout my time in scouting, I was not provided any education, training, materials or instruction on what constitutes inappropriate behavior by an adult volunteer, how to report inappropriate behavior by an adult volunteer, and/or to whom those [reports] should be made . . . ."[11]

In his objection to the defendants' motion for summary judgment, the plaintiff argued with respect to the defendants' agency argument that the Boy Scouts had advanced in the United States Supreme Court that "not only do they maintain a right to control the local troops and troop leaders, but that their ability to control the local troops and troop leaders is fundamental to the furtherance of the purpose, mission and goals of the [Boy Scouts of America]." With respect to the defendants' argument that they owed no duty to him, the plaintiff argued that the defendants "voluntarily assumed the duty to protect youth within [their] organization. Connecticut courts further recognize that when children are entrusted to the care of an organization, it must act with due care and caution for the safety of its participants."

Judge Schuman issued his memorandum of decision on August 16, 2012. First, the court construed count one of the complaint, which alleged corporate negligence. The court found that the complaint alleged twenty-seven ways in which the defendants had

breached their duty to prevent injury to the plaintiff.[12] The court found that many of the specifications of negligence alleged are not ways in which the defendants breached their duty to the plaintiff but, rather, are allegations of fact, such as that certain of the defendants' agents "knew, should have known or could have known upon investigation that Harris sexually assaulted minors . . . ."

The court also addressed the controlling law, stating that negligence often is defined as a breach of duty; *Shore* v. *Stonington*, 187 Conn. 147, 151, 444 A.2d 1379 (1982); and that whether a duty exists is a question of law. Id. It noted that Connecticut's courts have imposed "only a limited duty to take action to prevent injury to a third person." *Fraser* v. *United States*, 236 Conn. 625, 632, 674 A.2d 811 (1996). Before a duty may be imposed, a special relationship of custody and control must exist between the parties. Id. As to this case, the court concluded that the defendants owed no special duty to the plaintiff. Although the plaintiff suggests that Harris was an agent of the defendants, the court found that (1) the plaintiff failed to create a factual issue concerning agency and (2) even if there were an agency relationship between Harris and the defendants, the injury that the plaintiff suffered was not foreseeable. With respect to public policy issues, it is significant that Harris is the plaintiff's stepfather.

With regard to the question of an agency relationship between Harris and the defendants, the court was cognizant of the averments in the affidavits submitted by Walsh and Pokorny. See footnotes 8 and 9 of this opinion. Those affidavits present evidence that organizations such as the council offer scouting programs through existing community organizations that have received a scouting charter. The local chartered organization selects and retains its own volunteers to administer a scouting program. The Boy Scouts and council do not direct or supervise the day-to-day activities of the local troops. The affidavits aver that at no time was Harris an agent, servant or employee of the defendants.

The court found, on the basis of the affidavits, that when either of the defendants became aware of an allegation of sexual misconduct on the part of an adult volunteer, that volunteer was placed on a list of ineligible volunteers. Immediately upon learning of Harris' arrest for sexual abuse, the council notified the Boy Scouts and requested that Harris' membership be revoked and that he be placed in the ineligible volunteer file. The plaintiff failed to present an affidavit or any evidence to counter the facts averred in the affidavits submitted by the defendants.

In his objection to the defendants' motion for summary judgment, the plaintiff contended that there was an agency relationship between the defendants and Harris on the basis of the brief filed by the Boy Scouts in

*Boy Scouts of America* v. *Dale*, 530 U.S. 640, 120 S. Ct. 2446, 147 L. Ed. 2d 554 (2000).[13] The trial court disagreed, concluding that the assertions made in the federal brief did not contradict the averments in the affidavits of Walsh and Pokorny. Although the Boy Scouts admit in the *Dale* brief that it acts in an advisory capacity to scoutmasters and that it can refuse to recognize a leader who does not adhere to its beliefs, the *Dale* brief does not change the fact that the defendants do not select scoutmasters and they do not control their day-to-day activities. The court found that the plaintiff had failed to create a genuine factual dispute as to the defendants' evidence that there was no agency relationship between them and Harris. The court, relying on *Fraser* v. *United States*, supra, 236 Conn. 632,[14] therefore, concluded that the defendants had no legal duty to protect the plaintiff.

The court also concluded that, assuming there was an agency relationship between Harris and the defendants, the defendants had no duty to exercise care to avoid harm to a third person in this case because the harm was not foreseeable. See id., 633. The plaintiff presented no evidence to dispute the averments in the defendants' affidavits that they did not know of Harris' "sexual abuse of his stepson, or of any sexual misconduct, until a newspaper article concerning his arrest was published" on July 3, 2007. The plaintiff told no one about the abuse until March, 2007, when he confided in his girlfriend. The court found no evidence that the defendants knew about the sexual abuse or had constructive knowledge of it. The court found no indication that Harris had a criminal record prior to the events at issue here. The court concluded that an ordinary person in the position of the defendants, knowing what the defendants knew or should have known, would not anticipate harm of the general nature that the plaintiff suffered. See *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 572, 717 A.2d 215 (1998).

As to the second part of its foreseeability analysis concerning public policy, the court framed the question as whether the defendants' responsibility for their alleged negligent conduct should extend to the plaintiff's particular circumstances. See id. The court found that, although the plaintiff suffered a grievous loss, the defendants should not bear responsibility for it merely because loss occurred. The person responsible for the plaintiff's injuries and loss is Harris. The defendants were far removed from the crimes, they did not select Harris to be a volunteer, and they did not control his activities. Moreover, the defendants had no reason to suspect Harris of sexually abusing the plaintiff. The plaintiff himself presented evidence that the Boy Scouts perform background checks on potential leaders, and he did not suggest any information regarding child sexual abuse that a background check of Harris would have revealed. The court found that although the Boy

Scouts have a general policy prohibiting one-on-one contact between scout leaders and scouts, that policy was not violated in this instance due to the parent-child exception to the policy.

The court concluded that Harris' sexual abuse of the plaintiff was not foreseeable to the defendants and that they had no duty to protect the plaintiff from the harm perpetrated by Harris. The court granted the defendants' motion for summary judgment. On appeal, the plaintiff claims that the court erred by (1) failing to consider the defendants' admissions that they have a duty to protect youth within scouting, (2) determining that sexual abuse of a minor within scouting is not foreseeable, and (3) making credibility determinations and deciding questions of fact. We reject each of the plaintiff's claims.

An appellate court's review of the "trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Neuhaus* v. *DeCholnoky*, 280 Conn. 190, 199, 905 A.2d 1135 (2006). "Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. . . . However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, supra, 306 Conn. 534–35; see also Practice Book § 17-49.

"A material fact is a fact that will make a difference in the result of a case. . . . The facts at issue are those alleged in the pleadings. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . [T]he party adverse to such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . .

"While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . On appeal, however, the burden is on the

opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment motion was clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, 49 Conn. App. 582, 590–91, 715 A.2d 807 (1998).

The following legal principles guide our resolution of the plaintiff's claims. The essential elements of a cause of action sounding in negligence are duty, breach of that duty, causation, and actual injury. *Grenier* v. *Commissioner of Transportation*, supra, 306 Conn. 538. A duty of care is a prerequisite to a finding of negligence. *Gomes* v. *Commercial Union Ins. Co.*, 258 Conn. 603, 614, 783 A.2d 462 (2001). "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant [breached] that duty in the particular situation at hand. . . . If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." (Citation omitted; internal quotation marks omitted.) Id., 614–15.

"Duty is a legal conclusion about relationships between individuals, made after the fact . . . ." (Internal quotation marks omitted.) *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 632, 749 A.2d 630 (2000). Our Supreme Court has stated that "the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, supra, 306 Conn. 539. "A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." (Internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 139–40, 2 A.3d 859 (2010).

Generally, there is "no duty that obligates one party to aid or to protect another party. . . . One exception to this general rule arises when a definite relationship between the parties is of such a character that public policy justifies the imposition of a duty to aid or to protect another. . . . In delineating more precisely the parameters of this limited exception to the general rule, this court has concluded that, [in the absence of] a *special relationship of custody or control*, there is no duty to protect a third party . . . ." (Citations omitted;

emphasis in original; internal quotation marks omitted.) *Murdock* v. *Croughwell*, 268 Conn. 559, 566, 848 A.2d 363 (2004); see also 2 Restatement (Second), Torts §§ 314, 314A, 315 (1965).

We have reviewed thoroughly the complaint, the motion for summary judgment and the plaintiff's objection thereto, affidavits of the parties, their arguments on appeal, and the trial court's memorandum of decision. We conclude that the court properly granted the defendants' motion for summary judgment. Although the plaintiff alleged that Harris was an agent of the defendants, the defendants presented evidence that, under the organizational structure of the Boy Scouts, the local chartered organization is responsible for the selection and supervision of troop leaders. The plaintiff presented no evidence to counter that fact. Thus, the plaintiff failed to establish a genuine issue of material fact.

In this case, Walsh and Pokorny averred that they had no knowledge of Harris' abuse of the plaintiff or other minors until after the plaintiff went to the police and facts related to Harris' arrest were published in a newspaper.[15] The plaintiff acknowledged that he told no one other than his girlfriend of the abuse until he went to the police in 2007. Because Harris had no prior criminal record, nothing untoward would appear on his background check.[16] Since the 1980s, the Boys Scouts have conducted background checks of volunteers. "Liability may not be imposed merely because it might have been foreseeable that some accident could have occurred; rather, liability attaches only for *reasonably* foreseeable consequences." (Emphasis in original.) *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 577. As regrettable and tragic as the circumstances of this case are for the plaintiff, we agree with the trial court that the defendants were not in control of the situation and that Harris is the person responsible for the plaintiff's injuries, not the defendants.

We also agree with the trial court that the arguments contained in the Boy Scouts' *Dale* brief; see *Boy Scouts of America* v. *Dale*, supra, 530 U.S. 640; are not an admission that created a special duty owed to the plaintiff. In its brief in *Dale*, the Boy Scouts stated that "[n]o adult leader can be appointed without the approval of the sponsoring institution, the local Council . . . Adult leaders have been denied leadership positions in Scouting for various views and behaviors which Boy Scouts of America deems inconsistent with the Scout Oath and Scout Law. . . ." The plaintiff also relies on the *Dale* brief's further statement that the mission of the Boy Scouts is "to instill the values of the Scout Oath and Law in youth," and that the "[r]esponsibility for inculcating Boy Scouting's values is entrusted to the volunteer Scoutmaster and Assistant Scoutmaster." Those statements, however, do not contradict the affidavits

submitted by the defendants in this case. Although the Boy Scouts can discharge a scoutmaster or refuse to register a particular scoutmaster on the basis of conflicts with scouting philosophy, those facts do not negate the facts averred by Walsh and Pokorny that the local chartered organization is responsible for selecting and supervising its adult volunteers. The *Dale* brief actually is consistent with the facts of this case. As soon as the defendants learned of Harris' sexually abusive behavior toward the plaintiff, he was placed in the ineligible volunteer file and his membership in the Boys Scouts was revoked.

With respect to the plaintiff's argument that the defendants presented conflicting evidence as to the degree of their involvement and control over the scouting program, the court found that the defendants make the scouting program available to local chartered organizations. The local chartered organization selects the portions of the scouting program each organization deems appropriate for its youth. The plaintiff presented the court with an affidavit in which he averred that he was not provided with any education, training, instruction or materials on the subject of youth protection, the dangers of sexual abuse in scouting, and/or the prevalence of sexual abuse in scouting. Pursuant to the organizational structure of the Boy Scouts, the defendants left to the local chartered organization the responsibility of selecting programs and materials for the youth it was serving.

Turning to the court's conclusion that there was no special relationship between the defendants and the plaintiff, we also agree. The plaintiff himself presented evidence that the defendants have a policy generally of prohibiting one-on-one contact between scout leaders and scouts. That policy provides an exception where a parent-child relationship exists, as it did here. As the defendants have pointed out in their appellate brief, the relationship nexus between the plaintiff and Harris was the plaintiff's mother, not the defendants. Several federal courts have declined to find institutional liability where the nexus of abuse was not the organizational relationship. See *Roe* v. *Humke*, 128 F.3d 1213, 1218 (8th Cir. 1997) (summary judgment properly granted as police officer's sexual abuse occurred when he was off duty on his private property); *Becerra* v. *Asher*, 105 F.3d 1042, 1047 (5th Cir.) (no state liability where sexual abuse did not occur under color of state law), cert. denied sub nom. *Becerra* v. *Houston Independent School District*, 522 U.S. 824, 118 S. Ct. 82, 139 L. Ed. 2d 40 (1997); *D.T.* v. *Independent School District*, 894 F.2d 1176, 1186–88 (10th Cir.) (no nexus between private actions of coach and school employment), cert. denied, 498 U.S. 879, 111 S. Ct. 213, 112 L. Ed. 2d 172 (1990). We therefore conclude that the court properly granted the defendants' motion for summary judgment.

## III

The plaintiff's third claim is that the court abused its discretion by denying his motions to reargue. We do not agree.

The following facts are relevant to the plaintiff's claim. On September 4, 2012, the plaintiff filed a motion to reargue/reconsider the court's ruling on the defendants' motion for summary judgment. The plaintiff contended therein that the court had overlooked the controlling case law of *Coville* v. *Liberty Mutual Ins. Co.*, 57 Conn. App. 275, 748 A.2d 875, cert. granted, 253 Conn. 919, 755 A.2d 213 (2000) (appeal withdrawn March 30, 2001), and *Gutierrez* v. *Thorne*, 13 Conn. App. 493, 537 A.2d 527 (1988). The plaintiff also argued that the court had misapprehended certain facts of the case. The defendants objected to the motion to reargue. On September 20, 2012, following the unofficial release on the Judicial Branch website of *Grenier* v. *Commissioner of Transportation*, supra, 306 Conn. 523, the plaintiff filed a supplemental memorandum of law in support of his motion to reargue.[17] On September 24, 2012, the defendants filed an objection to the plaintiff's supplemental memorandum. On September 26, 2012, the plaintiff marked as ready his motion to reargue, which appeared on the October 1, 2012 short calendar. He asked the court to decide the matter "on the papers." The plaintiff subsequently received a notice from the court indicating that Judge Schuman had denied the motion to reargue on September 16, 2012. The plaintiff filed a subsequent motion to reargue on September 26, 2012, which was denied by the court on October 12, 2012.

On appeal, the plaintiff contends that in granting the defendants' motion for summary judgment, the court relied on one portion of *Gutierrez* v. *Thorne*, supra, 13 Conn. App. 493, but overlooked the portion of the opinion that holds that the foreseeability of sexual assault is not one susceptible to adjudication by summary judgment and is within the province of the trier of fact. Moreover, the plaintiff argued, the trial court did not have the benefit of our Supreme Court's decision in *Grenier*. On appeal, the plaintiff argues that the court abused its discretion by refusing to consider the controlling case law before denying the motion to reargue. Because *Coville*, *Gutierrez* and *Grenier* are factually distinguishable from this case, we conclude that the plaintiff was not harmed by the court's premature ruling on his motion to reargue.

"The standard of review for a court's denial of a motion to reargue is abuse of discretion. . . . When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness. . . . As with any discretionary action of the trial court . . . the ultimate [question for appellate

review] is whether the trial court could have reasonably concluded as it did. . . .

"[T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address . . . claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple . . . ." (Internal quotation marks omitted.) *Fortin* v. *Hartford Underwriters Ins. Co.*, 139 Conn. App. 826, 843, 59 A.3d 247, cert. granted on other grounds, 308 Conn. 905, 61 A.3d 1098 (2013).

*Coville* and *Grenier* stand for the proposition that one who undertakes to perform a service that he has no duty to provide must provide it with reasonable care. See *Coville* v. *Liberty Mutual Ins. Co.*, supra, 57 Conn. App. 281–82. This argument is related to the plaintiff's reliance on the *Dale* brief. For purposes of this case, the plaintiff has assumed that the Boy Scouts has undertaken the duty to protect all scouts from harm. As the trial court explained, the Boy Scouts has established certain programs that are available to the local chartered organizations, but the defendants do not select the programs or supervise the troop leaders who implement them. The defendants did not assume custody of the plaintiff and were not in control of the programs offered by the local chartered organization or the selection of volunteer troop leaders. The uncontradicted evidence before the court demonstrates that whenever the defendants learn of an adult volunteer who places scouts at risk of harm, the individual is placed on an ineligible volunteer list.

In *Coville*, the plaintiff became intoxicated and her boyfriend placed her in his truck against her will in order to drive her home. Id., 277. He neglected to fasten the plaintiff's seat belt or lock the passenger door. Id. As the boyfriend drove the plaintiff home, the plaintiff opened the passenger door. Id. The boyfriend successfully closed the door twice, but on the plaintiff's third attempt she fell out of the moving vehicle and suffered a traumatic brain injury. Id. The issue on appeal concerned the court's jury instructions. This court determined that the trial court erred by charging the jury with the customary duty of reasonable care owed by a driver to his passenger, rather than the special duty owed by a driver who takes "custody of another under circumstances such as to deprive the other of his or her normal opportunities for protection," as requested by the plaintiff. (Internal quotation marks omitted.) Id., 278. The circumstances of *Coville* are not the circumstances before us in this case. Here, the defendants did not take custody of the plaintiff. His scout troop and

the selection of adult volunteers was under the control and supervision of the local chartered organization.

*Grenier* arose out of a motor vehicle accident on Interstate 95, which resulted in the death of a number of Yale University fraternity pledges. *Grenier* v. *Commissioner of Transportation*, supra, 306 Conn. 526–27. The plaintiff, as the administrator of the estate of Nicholas Grass, brought an action against a number of defendants, including the Delta Kappa Epsilon National Fraternity and its local Phi Chapter. Id. Following a night of pledging activity in New York City, the president of the Phi Chapter directed one of its members to drive some of the pledges from New York City to New Haven. Id., 529. Our Supreme Court determined that the Phi Chapter did not owe Grass a general duty to provide safe transportation; id., 538–40; but once it voluntarily provided transportation, it assumed a duty to do so safely. Id., 546–52. In this case, we agree with the trial court that the defendants did not owe the plaintiff a general duty of care, and there is no evidence that they volunteered any service that created a special duty.

*Gutierrez* is readily distinguishable from the present case because the tortfeasor was an employee of the Department of Mental Retardation. *Gutierrez* v. *Thorne*, supra, 13 Conn. App. 494. In that case, the trial court granted the defendant's motion for summary judgment. Id., 498. On appeal, the issue was whether it was "reasonably foreseeable that a male employee of the department of mental retardation, who was assigned to supervise the plaintiff's living situation and who was supplied by the department with a key to the plaintiff's apartment, would commit a sexual assault upon the plaintiff in that apartment . . . ." Id., 494. This court determined that the defendant was not liable to the plaintiff on a theory of respondeat superior; id., 498; which is consistent with the court's conclusion in this case. This court, however, determined that the case turned on the foreseeability of the injury of the general nature suffered by the victim. Id., 500. This court further concluded that foreseeability of the injury was a question of fact for the trier of fact to determine, and that the question was not one appropriate for resolution by means of summary judgment. Id., 500–501. Again, this case is different from *Gutierrez*, which concerned the tortious acts of an employee. Here, Harris was not an employee of the defendants; he was a volunteer under the supervision and control of the local chartered organization. For all of the foregoing reasons, we conclude that the court properly denied the plaintiff's motions to reargue.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Harris, a self-represented defendant, is not a party to this appeal. The plaintiff alleged negligence, recklessness, and intentional sexual assault

against Harris. Although it was not alleged, the record discloses that Harris is the plaintiff's stepfather.

Harris pleaded guilty to numerous criminal charges, including sexual assault in the first degree, involving the plaintiff and two other minors. Harris received a total effective sentence of twenty-five years incarceration, execution suspended after fifteen years, and ten years of special probation.

[2] In his brief on appeal, the plaintiff represents that the first time Harris abused him sexually, he was not yet old enough to be a member of the Boy Scouts.

[3] The plaintiff appealed, challenging, in part, the court's rendering of summary judgment. In his brief, however, the plaintiff only contests the rendering of summary judgment as to count one of his complaint. We therefore consider his summary judgment challenge regarding counts two and three to be abandoned. See, e.g., *Merchant* v. *State Ethics Commission*, 53 Conn. App. 808, 818, 733 A.2d 287 (1999).

[4] Judge Wagner stated in part: "Now, just because the corporation is the defendant, if it's a worldwide, or even a statewide organization, we got to limit the inquiries, at least, in the first instance, to those involved in the years of the locality. Otherwise, it would put a tremendous burden on a defendant to answer all these inquiries . . . which would exceed the cost of the case and cost of recovery. At least in the first instance, we get to try and limit it, limit the scope of discovery."

[5] The plaintiff never deposed any of the defendants' representatives.

On November 18, 2011, the defendants filed a supplemental disclosure to interrogatory 14, stating: The Boy Scouts "has sponsored such activities as they relate to American society which is inclusive of the Scouting Movement. Please see as examples: The Victimization Prevention Programs; A National Survey: Psychosocial Sequela of Violent Victimization in National Youth Sample; Victimization of Children, How Does Receiving Information about Sexual Abuse Influence Boys' Perceptions of Their Risk?; and Answers to Important Questions About the Scope and Nature of Child Sexual Abuse." The plaintiff never submitted supplemental discovery requests to the defendants.

[6] In a footnote in his brief to this court, the plaintiff stated that in October, 2012, subsequent to Judge Schuman's granting the defendants' motion for summary judgment, more than 1200 files documenting adult volunteers and scout leaders who had been banned from scouting as a result of allegations of suspected abuse between 1965 and 1985 were released to the public. See *Doe* v. *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 352 Or. 77, 280 P.3d 377 (2012) . We have read the opinion of the Supreme Court of Oregon and note the following relevant procedural history. "During pretrial discovery, plaintiffs requested that [the Boys Scouts] produce its ineligible volunteer files. After the [Boy Scouts] objected, plaintiffs moved to compel production of the files. The trial court granted plaintiffs' motion to compel and ordered [the Boy Scouts] to produce all unredacted ineligible volunteer files covering the period 1965 to 1985." Id., 81. We note that the plaintiff's request in this case was not similarly discreet.

[7] According to the Boy Scouts, Camp Johnson is not affiliated with either the Boy Scouts or the council.

[8] In Walsh's affidavit, he averred that the Boy Scouts were chartered by Congress in 1916 to deliver scouting programs through existing community organizations. The Boy Scouts is governed by a national council of volunteers, and the national executive board is comprised of volunteers. The national executive board appoints a chief scout executive, who hires a national staff of professional scouters. The professional scouters and their paid support staff are the only employees of the Boy Scouts.

Walsh further averred that the Boy Scouts charters local organizations known as local councils, which incorporate as nonprofit organizations in their respective states to promote the scouting movement at the local level. The local councils generally are comprised of civic, business, and community volunteers, as well as small professional staff. Each local council is a separate level entity that raises and dispenses its own funds and manages its own affairs. Each local council is managed by an executive board consisting of volunteers. The council executive board employs a limited number of professional scouters to administer the scouting program for the region in which the council sits. The professional scouters and their support staff are the only full-time employees of the local councils. The Connecticut Rivers Council is the local council in the present matter.

Moreover, Walsh's affidavit avers that the local councils offer the scouting program through existing community organizations such as churches, schools, service clubs, and fraternal organizations. When a community orga-

nization decides to form a scout troop, it forms a local troop committee that is responsible for promoting the troop and recruiting participants. After a local troop committee is formed, the community organization applies to the local council for a charter that authorizes the community organization to use those aspects of the scouting program it deems fit. The local chartered organization owns and operates its own troop; it selects its own volunteer leaders to administer the program. The Boy Scouts and the local councils neither direct nor supervise the day-to-day activities of a local scout troop. The individual units and troops and their scoutmaster are responsible to their own troop committee.

There are more than 1 million scouting volunteers nationwide who organize and direct activities for approximately 2.6 million youth in scouting. The turnover rate of scouting volunteers is approximately one-third each year.

When the Boy Scouts or the local council become aware of any allegation of sexual misconduct by an adult volunteer, an ineligible volunteer file is created and that volunteer immediately is placed on the list of ineligible volunteers. The volunteer and the chartered organization representative are each sent a letter stating that the volunteer's registration is revoked. After an ineligible volunteer file is created for a particular volunteer, that person is prohibited from ever again participating in scouting.

Walsh's affidavit concluded that the Boy Scouts "did not have any notice or knowledge of [Harris'] sexual abuse of his stepson, or of any sexual misconduct, until a newspaper article concerning his arrest was published in the Hartford Courant on July 3, 2007." Immediately upon learning of Harris' arrest for sexual abuse, the council notified the Boys Scouts of the allegations against Harris and requested that his membership be revoked and that he be placed on the ineligible volunteer file. The Boy Scouts created an ineligible volunteer file for Harris and placed his name on the list of ineligible volunteers. On July 3, 2007, the director of field service for the Boy Scouts sent a letter to Harris and the chartered organization revoking Harris' registration as a volunteer. Moreover, Walsh averred that at no time was Harris acting as an agent or employee of the Boy Scouts.

[9] In his affidavit, Pokorny averred that he formerly was employed as the scout executive of the Connecticut Rivers Council, the Boy Scouts' local council. He also set forth the organizational facts of the Boy Scouts identical to those contained in Walsh's affidavit. See footnote 8 of this opinion. Pokorny also averred that the council had no notice of Harris' sexual abuse of the plaintiff, his stepson, or of any sexual misconduct on the part of Harris until news of his arrest was published on July 3, 2007. The remainder of Pokorny's affidavit is similar to that of Walsh.

[10] The trial court found that the plaintiff's attestation as to the accuracy of the complaint was inaccurate. The court found that the complaint does not contain a consolidated statement of facts, and alleges that Harris' sexual abuse of the plaintiff occurred between 1991 and 1997, which "is obviously wrong, given that the plaintiff was born in 1991." The transcript of Harris' guilty plea reveals that he abused the plaintiff between 2001 and 2007.

[11] The plaintiff did not make similar allegations in his complaint.

[12] The court found that the plaintiff had alleged that the defendants had breached their duty to prevent injury to him by failing to monitor and supervise Harris properly, failing to promulgate protocols, rules, or guidelines to screen out sexual predators, failing to enforce protocols promulgated to prevent campmasters from allowing or requiring minors to sleep with them in the campmaster's cabin, and failing to investigate, warn, or inform parents of the danger that Harris posed to children.

[13] In *Dale*, the United States Supreme Court held that the application of a state public accommodations law to require the Boy Scouts to reinstate a homosexual scout leader, contrary to the Boy Scouts' view that homosexuality is inconsistent with its values, violated the Boy Scouts' first amendment right of expressive association. *Boy Scouts of America* v. *Dale*, supra, 530 U.S. 640.

[14] "Existing Connecticut precedents impose only a limited duty to take action to prevent injury to a third person. Our point of departure has been that absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another." (Internal quotation marks omitted.) *Fraser* v. *United States*, supra, 236 Conn. 632.

[15] At oral argument on the defendants' motion for summary judgment, the plaintiff argued that the defendants' knowledge of Harris' sexual abuse was constructive and conceded that there is no evidence that the defendants had actual knowledge of it.

[16] See *Boy 1* v. *Boy Scouts of America*, 832 F. Supp. 2d 1282,1285 (W.D. Wn. 2011) (more extensive background checks began in late 1980s).

[17] The only thread that binds *Coville*, *Grenier*, and *Gutierrez* to the facts of this case is that each plaintiff suffered a loss of tragic proportion.